**OWENS–ILLINOIS, INC.**

v.

**LAKE SHORE LAND COMPANY, INC., Appellant.**

**No. 79–1184.**

United States Court of Appeals, Third Circuit.

Argued Oct. 9, 1979.

Decided Dec. 7, 1979.

John J. Stroh, Jr., Roger H. Taft (argued), MacDonald, Illig, Jones & Britton, Erie, Pa., for appellee.

Douglas Painter (argued), McGinness, Painter & McGinness, Cleveland, Ohio, Eugene J. Brew, Jr., Dale & Brew, Erie, Pa. for appellant.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this diversity action, the plaintiff asked for a declaratory judgment establishing its right under an option agreement to compel the defendant's conveyance of certain realty. Asserting that its answer presented legal issues, the defendant demanded a jury trial, but the district court determined that the suit was the counterpart of an equitable action for specific performance and struck the request for a jury.

The court also concluded that a third party to whom the plaintiff in turn had granted a separate option to purchase was not an indispensable party. We agree and affirm these rulings as well as those interpreting the agreement to require a conveyance.

The plaintiff's suit in the district court sought to resolve a dispute about the interpretation of the option. After pretrial, when it became evident that the trial would not be concluded until the date for conveyance had passed, the complaint was supplemented to request specific performance. In response, the defendant filed a second answer that repeated its original defenses, added a counterclaim for damages, and reasserted the demand for a jury. The district court again denied a jury trial and dismissed the counterclaim without prejudice. After a bench trial, the court found the option agreement was valid and decreed specific performance.

In 1967, the defendant agreed to construct a warehouse on a four-acre tract of land near Erie, Pennsylvania, and lease the premises to the plaintiff for a term of 15 years. On the same day, the parties executed a separate option agreement, granting the plaintiff the right to purchase the leasehold at the end of each five-year period of occupancy under the lease. The plaintiff occupied the completed building until 1973 when it sublet the premises to the Jeannette Corporation and also granted it an option to buy.

By letter dated July 2, 1976, the plaintiff notified the defendant that its option under the 1967 agreement would be exercised as of September 30, 1977, the end of the second five-year period of the lease. Relying upon violations of what it termed the "lease-option agreement," the defendant refused to agree to the settlement date, writing "we do not intend to convey title on the days you suggest, or any day." On March 15, 1977, the plaintiff filed this suit asking for a declaratory judgment that a valid and enforceable option agreement existed, it had been properly exercised, and the defendant was obliged to convey title on or before September 30, 1977.

In its answer, the defendant asserted a failure of consideration, violations of the lease by the plaintiff, and failure to join the Jeannette Corporation as an indispensable party. Noting that the defendant did not seek any legal remedy in its answer or present anything else that rose to the status of a claim, and that plaintiff's claim was equitable in nature, the district judge refused the jury demand. He also denied the defendant's motion to dismiss because of plaintiff's failure to join the Jeannette Corporation. The court found that Jeannette, not being an assignee of the 1967 option agreement between the plaintiff and defendant, could not enforce its terms and could secure the property only if plaintiff prevailed in this suit.

At a pretrial conference on September 22, 1977, a few days before the date set in the option agreement for conveyance, the court suggested the complaint might be "amended" to request specific performance. On November 14, 1977, plaintiff was granted leave to file an "amendment" adding a request for that relief.

On November 23, 1977, without obtaining leave of court, defendant filed an "answer to the amended complaint" that included a counterclaim seeking damages for breaches of the lease agreement and again requested a jury. After the district court struck this second demand for a jury trial, the defendant unsuccessfully sought a writ of mandamus from this court. On the authority of Fed.R.Civ.P. 13(f), the district court dismissed the counterclaim as an omitted counterclaim, "without prejudice to the right of the defendant if it sees fit to file a separate action based upon said facts alleged in the counterclaim." Defendant then petitioned this court for a stay of proceedings, but we refused and the Supreme Court did likewise.

In its findings, the district court concluded that the plaintiff's letter of July 2, 1976 complied with the terms of the option agreement. Although the agreement required that notice of exercise be sent "not later than 45 days" before the expiration of the appropriate lease year (in this case on

September 30, 1977), the court held that that language did not invalidate the letter sent more than 45 days before that time. The trial judge also determined that the defendant's flat rejection of the notice on December 15, 1976 relieved the plaintiff of any obligation to take the additional steps toward conveyance set out in the agreement. Plaintiff's alleged violations of the lease were held to be not available as defenses since the option agreement and lease were entirely independent agreements.[1] The court then entered a decree of specific performance.

■ The defendant asserts several grounds for reversal, but presses most strongly its contention that a jury trial should have been granted on both the complaint for declaratory judgment and the counterclaim. We do not decide whether a jury was required to hear the counterclaim since we conclude that the district judge did not err in dismissing it.

The trial judge observed that the counterclaim arose out of a claim that existed at the time the first complaint was filed and the defendant should have raised the matter in its original answer. Under Fed.R. Civ.P. 13(f), an omitted counterclaim may be filed at a later time only by leave of court. Since the defendant did not secure leave, the court granted plaintiff's motion to dismiss the counterclaim.

The docket reflects that the original answer was filed on April 18, 1977 and the counterclaim on November 23, 1977, some seven months later. More than just the lapse of time was implicated. At a pretrial conference in September 1977, the issues had been fixed and trial set for December 27. Allowance of the counterclaim would doubtless have set off a new wave of discovery before trial could commence. The court had ample reason to believe that the counterclaim was interposed at such a late date in order to delay final disposition of

the request for specific performance. As the district judge observed in his adjudication, "[d]efendant throughout this litigation has evinced a settled intention to grasp at all available straws to avoid its obligation to convey this real estate pursuant to the option which it executed." *Owens-Illinois, Inc. v. Lake Shore Land Co.,* 457 F.Supp. 896, 902 (W.D.Pa.1978). Moreover, the dismissal was without prejudice to the defendant's right to seek damages in a separate suit for breach of the lease agreement.

The defendant contends that under Fed. R.Civ.P. 15(a) it could respond to the "amended complaint" as a matter of right, even to the extent of raising issues beyond the scope of the amendment, and inject into the action what otherwise would be omitted counterclaims under Rule 13(f). It relies on *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.,* 50 F.R.D. 415 (D.Del. 1970), for the proposition that Rule 15(a) obliges a party to respond to the "amended pleading," not the "amendment," and an amending plaintiff cannot object that claims subsequently filed against it should have been asserted in response to the original pleading. *Id* at 418–19. Rule 15(a), however, is not controlling in the circumstances of this case.

Although the district judge originally characterized the claim for specific performance as an "amendment to the complaint," in dismissing the defendant's counterclaim and answer he correctly termed the plaintiff's request a "supplemental pleading" under Rule 15(d). Because it refers to events that occurred after the original pleading was filed, a supplemental pleading differs from an amendment, which covers matters that occurred before the filing of the original pleading but were overlooked at the time. One of the intended uses of a supplemental pleading is to change the nature of the relief initially requested, as was done here. 3 Moore's Federal Practice ¶ 15.16[1], at 15–240 to 41

---

1. The opinion of the district court is reported at 457 F.Supp. 896 (W.D.Pa.1978). By way of dictum, the court said that the plaintiff did not default under the lease. Since that issue was not before the court and the defendant had

been given leave to file a separate action for alleged violations of the lease, the district court's opinion is not dispositive of the defendant's claims in that respect.

(2d ed. 1979); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1504, at 536–37 (1971). Under Fed.R.Civ.P. 15(d), the trial court determines whether a responsive pleading is advisable, and the judge acted within that discretion in declining to accept the counterclaim. In view of the circumstances here, we find no error in the district court's ruling, and consequently, the defendant's request to have a jury hear the counterclaim need not be addressed.

■ We turn then to the application for a jury included in defendant's first answer. In considering a demand for a jury trial, a court should look to the substance of the pleadings and not rely on the labeling used by the litigants. *Plechner v. Widener College, Inc.,* 569 F.2d 1250, 1257 (3d Cir. 1977); *see Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 476–77, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The test is whether the issues raised by the pleadings are such as would be triable to a jury at common law, *see Ross v. Bernhard,* 396 U.S. 531, 539, 542–43, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), and federal not state law is determinative, even in an action founded on diversity of citizenship, *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (per curiam).

Generally speaking, if the case is a purely equitable one, the parties are not entitled to a jury. The determination of the nature of the litigation has been made more difficult, however, by the merger of law and equity accomplished by the Federal Rules of Civil Procedure, and has been further complicated by the creation of new statutory remedies.

Declaratory judgments were created as a remedy in the federal courts some four years before the merger of law and equity took effect. *See* 28 U.S.C. §§ 2201–2202. The remedy may be granted upon either legal or equitable claims and is *sui generis.* In the first years following enactment of the statute, suits were brought on both sides of the court.[2] Because the statute

merely "preserves" and does not extend the right to jury trial, *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *see also* Fed.R.Civ.P. 57, premerger actions for declaratory relief properly in equity were tried to the court, and for those on the law side, a jury was available.

■ To effectuate the statute's neutral position on the jury trial, postmerger courts have found it necessary to preserve the distinction between law and equity in the declaratory judgment context. A workable formula that has been developed is to determine in what kind of suit the claim would have come to court if there were no declaratory judgment remedy. *See* 9 C. Wright & A. Miller, *supra* § 2313. If the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit—an action brought by one who would have been a defendant at common law—then the parties have a right to a jury. But if the action is the counterpart of a suit in equity, there is no such right. *See* F. James, Jr. and G. Hazard, Jr., Civil Procedure § 8.10, at 383–84 (2d ed. 1977).

■ Applying this test the district court properly characterized the case at bar as equitable. The complaint centered on the defendant's obligation to convey title to the plaintiff at a certain time in the future— there was no claim for damages or any other legal remedy. An action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court. *See Klein v. Shell Oil Co.,* 386 F.2d 659 (8th Cir. 1967); 5 Moore's Federal Practice ¶ 38.21 (2d ed. 1979); 9 C. Wright & A. Miller, *supra* § 2309. The plaintiff's suit, therefore, is not an inverted law suit, but rather is a claim cast in declaratory judgment form because the right to specific performance

2. For an interesting discussion of the issues, see Note, Right To Trial By Jury In Declaratory Judgment Actions, 3 Conn.L.Rev. 564 (1971).

had not ripened at the time the action was filed.[3]

As an alternative argument, the defendant contends that it pleaded matters that are "legal defenses" carrying entitlement to a jury trial. The answer asserted failure of consideration, breaches of the lease by the plaintiff in connection with subletting to Jeannette, lack of compliance with provisions pertaining to insurance, and failure to join an indispensable party. These defenses raise questions of fact and contractual interpretation, but they are not legal issues because they are not appended to a legal claim.

The defendant relies on the trilogy of *Beacon, Dairy Queen,* and *Ross.* In those cases, the Court held that in determining whether a jury trial is available in civil actions after merger the guiding consideration is whether the issues are legal or equitable in nature. In those opinions, the Court often seemed to use "legal issues" and "legal claims" interchangeably. On close reading, however, it becomes clear that the Court did not view "issues" and "claims" as the same.

Obviously, issues of fact arise in both legal and equitable proceedings[4] and focusing upon facts in isolation rather than as part of a claim would lead to confusion. Thus in one passage in *Ross* the Court said

that the right to a jury should not be infringed "by a court trial of a common *issue* existing between the [legal and equitable] *claims*." 396 U.S. at 538, 90 S.Ct. at 738. *See also Dairy Queen, Inc. v. Wood, supra* at 472, 82 S.Ct. at 897 ("any *issue* common to both legal and equitable *claims*") (emphasis supplied). Although "issue" and "claim" are not truly synonymous, they are inseparable. An "issue" does not exist in a vacuum and its characterization, for our purposes here, may be determined only by reference to the "claim" to which it is pertinent. If there are no legal claims in a suit, there are no legal issues for purposes of determining the right to a jury trial.

Here, the availability of the declaratory judgment remedy allowed the plaintiff to accelerate a suit for specific performance. To prevail, the plaintiff must establish a valid contract, and the trial will require proof of disputed factual matters and favorable interpretation of law. That, however, does not make plaintiff's claim a "legal one," nor do the defendant's denial of facts and assertion of contrary construction of contract language amount to "legal claims."[5] The defendant did not ask for affirmative relief but merely took the position that the plaintiff was not entitled to specific performance. That defense does not constitute a claim in either a legal or

3. In its brief, defendant seems to suggest that *Beacon Theatres, Inc. v. Westover, supra,* stands for the proposition that a declaratory judgment is a legal remedy and therefore all such actions are triable by a jury. The theory is discussed by Professors James and Hazard in their treatise, Civil Procedure § 8.10, at 384–87 (2d ed. 1977). But *Beacon* was an inverted law suit situation, not a traditional equitable claim, and the Court did not hold that all declaratory judgments are within the seventh amendment. Nor have the post-*Beacon* cases so construed the opinion. *See, e. g., James v. Pennsylvania General Ins. Co.,* 121 U.S.App.D.C. 251, 253, 349 F.2d 228, 230 (D.C. Cir. 1965) (question is "whether an action in equity could be maintained if declaratory judgment was not available"). *See also* 9 C. Wright & A. Miller, *supra* § 2313. The Court itself has noted that the fact that the action is in form a declaratory judgment case should not obscure the essential nature of the action. *See Simler v. Conner, supra* at 223, 83 S.Ct. 609.

4. As Justice Stewart pointed out in his dissent in *Ross v. Bernhard, supra,* "issues of fact" are rarely either legal or equitable but depend on the context in which they appear. 396 U.S. at 550, 90 S.Ct. 733. Apparently the majority did not take issue with this observation. They parted company with the dissenters on the nature of a shareholders' derivative suit. While the dissent viewed it as a single cause tried exclusively in equity, *id.* at 546, 90 S.Ct. 733, the majority focused on what they perceived to be its dual nature: first, the shareholders' right to sue on behalf of the corporation is equitable and, second, the corporate claim they assert is legal. *Id.* at 534–35, 90 S.Ct. 733.

5. We note in passing that since the district court concluded that the lease and the option were separate agreements under Pennsylvania law, the asserted breaches of the lease were irrelevant. Thus, those matters would not have been submitted to the jury in any event.

equitable sense. We therefore conclude there was no error in the district court's determination that the defendant was not entitled to a jury trial.

■ The defendant also contends that the case should have been dismissed because the plaintiff failed to join Jeannette Corporation to whom it had given an option in 1973.[6] The terms of that option were different from those in the 1967 agreement between plaintiff and defendant, and the latter contract was never assigned to Jeannette. The court found that Jeannette was not a party to be joined if feasible under Fed.R.Civ.P. 19(a)(1) or (2)—a precondition to being found indispensable—because its interests and those of the plaintiff were the same and disposition of the action without Jeannette's presence would not expose the parties to inconsistent obligations.[7]

The court observed that should plaintiff prevail in its case, defendant's obligation with respect to the property in question would be at an end; should plaintiff fail to honor its agreement to convey the property to Jeannette, the latter's dispute would be with plaintiff under the 1973 agreement and not with the defendant under the 1967 option agreement. Similarly, should plaintiff be unsuccessful in this action, any claim Jeannette may have under its January 15, 1973 agreement with plaintiff would be against plaintiff and not against Lake Shore Land Company. The court implicitly recognized that the language "as a practical matter" in Rule 19(a)(2)(i) has a restrictive as well as an expansive side. The fact that

the absent person may be affected by the judgment does not of itself require his joinder if his interests are fully represented by parties present.[8]  3A Moore's Federal Practice ¶ 19.07–1[2.–1], at 19–133 (2d ed. 1979); see, e. g., Fetzer v. Cities Service Oil Co., 572 F.2d 1250, 1255 (8th Cir. 1978). We find no error on the court's ruling under the circumstances present here.

Moreover, even if we did not agree with the district court's ruling, pragmatic considerations and appellate hindsight would counsel against reversal. The facts have been established and it is clear that neither Jeannette nor the defendant was prejudiced by the former's absence from the action. As we said in GTE Sylvania, Inc. v. Consumer Product Safety Commission, 598 F.2d 790 (3d Cir.), cert. granted, —— U.S. ——, 100 S.Ct. 479, 62 L.Ed.2d 405 (1979):

> "Although ordinarily consideration of [the public interest] would counsel in favor of requiring the joinder of interested parties, Provident Bank requires that, when viewed from an appellate perspective, such consideration 'include the fact that the time and expense of a trial have already been spent.'"

Id. at 799, quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). Our resolution of the appeal, therefore, would not be altered.

■ Defendant further contends that the plaintiff did not properly exercise the op-

---

**6.** Jeannette Corporation was a Pennsylvania Citizen as was the defendant. Hence, joinder of Jeannette as a plaintiff would have eliminated diversity and the jurisdiction of the court.

**7.** Rule 19(a) provides as follows:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action."

**8.** Under the terms of the 1967 option, plaintiff was required to pay defendant $92,000 for the property. The 1973 option provided that plaintiff would convey the property to Jeannette for a substantially higher sum.

tion by giving what is characterized as premature notice. The contract, however, provides that notice shall be given "not less than 45 days prior to the expiration of the lease year at the end of which the sale is to be consummated." The expiration day of the lease year was September 30, 1977.

The defendant appears to argue that the notice had to be given some time after October 1, 1976. We find no support for such an interpretation of the contract and conclude that the plaintiff complied with the notice requirement terms of the option. We are in agreement with the district court's ruling that the plaintiff's compliance with the other details pertaining to a closing date was waived by the defendant's refusal to perform.

Finally, defendant asserts that the court erred in not allowing interest from September 30, 1977 to the date of settlement. The defendant's motion to alter the decree to that effect was served more than ten days after entry of judgment, and accordingly was untimely. Fed.R.Civ.P. 59(e). We affirm on that basis and, in any event, would do so on the merits as well, since we find no error in the trial court's ruling.

The judgment of the district court will be affirmed.