**GIANT EAGLE, INC., Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY,
Defendant.**

Civ. A. No. 94–106.

United States District Court,
W.D. Pennsylvania.

April 24, 1995.

Bernard D. Marcus, Robert L. Allman, II, for plaintiff.

Thomas V. Gebler, Jr., Dennis St. John Mulvihill, Arlin M. Adams, for defendant.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court is the motion of plaintiff, Giant Eagle, Inc. ("Giant Eagle"), for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, for a new trial. Giant Eagle contends that defendant, Federal Insurance Company ("Federal"), failed to sustain the burden of proving its claim for reformation of an insurance contract by clear and convincing evidence and that plaintiff is entitled to judgment n.o.v. In addition, plaintiff renews its objection to our pretrial ruling that Federal was entitled to a jury trial pursuant to the teachings of *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

Giant Eagle is a Pennsylvania corporation which operates and supplies retail grocery supermarkets in Pennsylvania, Ohio and West Virginia. Giant Eagle was, at one time, the parent company of Phar–Mor, Inc. ("Phar–Mor"), a discount drugstore chain located throughout the United States. During the relevant time period, the six members of the Board of Directors of Giant Eagle also comprised the majority of the Board of Directors of Phar–Mor. However, with a few exceptions, the corporations did not have common officers. Federal is a New Jersey corporation that issues insurance policies, including directors and officers policies ("D & O policies"), in return for premiums paid by the insureds. Federal's principal place of business is in New Jersey. Jurisdiction is based on diversity of citizenship and the amount in controversy exceeds $50,000.00.

## I. RIGHT TO A JURY TRIAL

Before we consider the merits of Giant Eagle's motion for judgment as a matter of law, we must first resolve the jury trial issue. A Rule 50 motion for judgment as a matter of law is proper only within the context of a jury trial. If we conclude that this action should have been tried to the court, Rule 50 is inapplicable. *See Schlitt v. State of Florida,* 749 F.2d 1482, 1482–83 (11th Cir.1985)

("Fed.R.Civ.P. 50, governing directed verdicts, applies only in cases tried to a jury with power to return a binding verdict."). In that event, Giant Eagle submits that we should treat its motion as a motion for judgment on partial findings pursuant to Fed. R.Civ.P. 52(c). *See Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 476 n. 1 (3d Cir.1979). Because, as explained below, the two types of motions are judged under different standards, both at the trial court level and on appellate review, we must first determine whether we correctly held that Federal had the right to a trial by jury.

▪▪▪ Pursuant to Rule 50(a), a court may enter judgment as a matter of law against a party that receives a favorable jury verdict if there is insufficient evidence for a reasonable jury to find for that party. However, in considering a motion for judgment n.o.v.:

> the trial court must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the 'minimum quantum of evidence from which a jury might reasonably afford relief.' *Keith v. Truck Stops Corp.*, 909 F.2d 743, 745 (3d Cir.1990) (citations omitted). The court may not weigh evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury. *Blair v. Manhattan Life Ins. Co.*, 692 F.2d 296, 300 (3d Cir. 1982).

*Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 691 (3d Cir.1993). Moreover, appellate review of the grant of a judgment n.o.v. is plenary and the judgment will not stand "unless the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief." *Id.* at 692 (quoting *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 183 (3d Cir.1992)). Thus, the standards applicable to a Rule 50 motion are equivalent to those applied to motions for summary judgment under Rule 56.

▪▪▪ In contrast, Rule 52(c) authorizes a court, in all actions tried upon the facts without a jury or with an advisory jury, to enter judgment as a matter of law against a party at any time after that party has been fully heard on the issue. In entering a Rule 52 judgment:

> the court is not as limited in its evaluation of the nonmovant's case as it would be on a motion for a directed verdict. The trial judge is not to draw any special inferences in the nonmovant's favor nor concern itself with whether the nonmovant has made out a prima facie case. Instead, the court's task is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.

9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil 2d*, § 2573.1 (citations omitted). Moreover, a judgment entered pursuant to Rule 52 shall not be overturned on appeal unless the findings of the district court are "clearly erroneous." *Agathos v. Starlite Motel*, 977 F.2d 1500, 1504 (3d Cir.1992). "Factual findings are not clearly erroneous if the record contains sufficient evidence to support them." *Id.* (citation omitted).

In view of the disparate treatment of the two motions, an initial resolution of the jury trial issue is essential. Giant Eagle contends that Federal was not entitled to a jury trial because Federal was seeking reformation of a written contract which is purely an equitable claim in nature. Federal rejoins that the civil action at bar consists of both legal and equitable claims, that legal issues predominate, and that Federal is entitled to a jury trial as a matter of right pursuant to the Supreme Court's decision of *Beacon Theatres* and its progeny. In the alternative, Federal contends that the parties stipulated to try the action to a jury.

In analyzing this issue, a review of the procedural and historical facts is necessary. The dispute centers around the scope of a $20 million D & O insurance policy purchased by Giant Eagle from Federal. The policy was issued on February 24, 1992 and was effective from January 14, 1992 through April 13, 1993. In the fall of 1992, Giant Eagle became embroiled in the extensive litigation which emanated from the fraud that occurred at Phar–Mor during the late 1980's and early 1990's. Much of that litigation has been consolidated in this court by the Judicial Panel on Multidistrict Litigation as part

or *In re Phar–Mor, Inc. Securities Litigation*, MDL No. 959 (W.D.Pa.). Giant Eagle, along with many of its directors and officers, are defendants in a number of the civil actions in the MDL proceedings. Following commencement of the MDL, Giant Eagle sought coverage under the D & O policy by providing Federal with a timely written notice of the claims as required by the policy. Federal declined coverage of the claims by letter dated September 29, 1992 and again by letter on September 2, 1993. The denial of coverage was premised on Federal's contention, as set forth in the September 2, 1993 letter, that Endorsement No. 2 to the policy excludes, or was intended to exclude, claims against Giant Eagle's directors and officers that are based on "common claims or common wrongful acts relating to Phar–Mor."

Giant Eagle filed the instant two-count complaint against Federal on January 21, 1994. Count I of the complaint seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and requests the entry of a judgment declaring that the D & O policy insures Giant Eagle and its directors and officers for the claims asserted in the Phar–Mor MDL up to a liability limit of $20 million. Count II is a breach of contract claim and plaintiff seeks damages for Federal's refusal to pay the defense costs of the directors and officers of Giant Eagle. The complaint does not contain a demand for a jury trial.

At or around the time that the complaint was filed and with a view towards expediting resolution of the coverage question, the parties executed a stipulation which, among other things, set the parameters for the instant action. Specifically, the stipulation, at paragraph 12, states that:

> Federal has denied coverage under the [D & O policy] with respect to the Phar–Mor Securities Litigation based on Endorsement # 2, as set forth in the September 2, 1993 letter from Dan A. Bailey, Esquire to Jane S. Barnes, Esquire. The parties agree that the only issue to be litigated in this expedited action is whether Federal may continue to deny coverage obligations under the [D & O policy] for

the reasons relating to Endorsement # 2 set forth in Attorney Bailey's letter. The parties expressly reserve the right to assert outside of this action all other alternative potential coverage issues and defenses. The parties further agree that there will be no determination in this case of the amount of any obligation of Federal pursuant to any policy of insurance, including but not limited to, extra-contractual damages, and any such claims are reserved.

In addition, paragraph 13 of the stipulation provides that the "parties agree that all issues of fact to be decided at time of trial which they are legally entitled to have decided by a jury shall be decided by a jury and not the court."

Federal filed an answer, with a jury trial demand, on February 15, 1994. As its "Fifth Defense," Federal alleges that Endorsement No. 2 fails to state the intent of the parties due to a scrivener's error and/or a mutual mistake and that the policy should be reformed by the court to reflect the actual intention and agreement of the parties. Federal's "Sixth Defense" incorporates the stipulation and states that the parties have agreed "that the only issue to be litigated in this action is whether Endorsement 2 [of the D & O policy], either as intended by the parties, reformed by the Court, or as set forth therein, excludes coverage for the claims made against the Giant Eagle officers and directors...."

After the close of discovery, the court ordered counsel for the parties to file briefs addressing Federal's right to a jury trial. After considering the submissions of the parties, the urgings of Federal, and the decisions of the Supreme Court in *Beacon Theatres* and *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), we held that the legal issues predominated over the action and, over Giant Eagle's objection, that Federal had the right to try its reformation claim to a jury. Giant Eagle now requests that we reconsider this holding based on the contention that the issue of reformation is purely equitable in nature and should be decided by the court.[1]

---

1. We find no merit to Federal's assertion that Giant Eagle waived its right to contest our jury

"The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by statute of·the United States shall be preserved to the parties inviolate." Fed.R.Civ.P. 38(a). The Seventh Amendment preserves the right to a jury trial in suits at common law, that is, actions at law, and the right does not attach to suits in equity dealing with equitable matters. *Ross v. Bernhard,* 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970). This right is neither extended nor limited by the Declaratory Judgment Act, *Beacon Theatres* 359 U.S. at 504, 79 S.Ct. at 953, and a "workable formula that has been developed is to determine in what kind of suit the claim would have come to court if there were no declaratory judgment remedy." *Owens–Illinois, Inc. v. Lake Shore Land Co., Inc.,* 610 F.2d 1185, 1189 (3d Cir.1979) (citation omitted).

. In *Owens–Illinois,* the Court of Appeals reiterated the general rule for determining whether a party has a right to a jury trial. It stated that:

In considering a demand for a jury trial, a court should look to the substance of the pleadings and not rely on the labeling used by the litigants. The test is whether the issues raised by the pleadings are such as would be triable to a jury at common law, and federal not state law is determinative, even in an action founded on diversity of citizenship.

Generally speaking, if the case is a purely equitable one, the parties are not entitled to a jury. The determination of the nature of the litigation has been made more difficult, however, by the merger of law and equity accomplished by the Federal Rules of Civil Procedure, and has been further complicated by the creation of new statutory remedies.

*Id.* at 1189 (citations omitted).

In *Beacon Theatres* and *Dairy Queen,* the Supreme Court wrestled with the application of the constitutional right to a jury trial in mixed cases of law and equity. ˙In both cases, the Court held that the right to a jury

trial attached because a determination of the equitable claims would also have finally determined issues which were common to both the equitable and legal claims and would deprive the party seeking trial by jury of the right to have those issues determined by a jury. In *Beacon Theatres,* the Court stated that "[o]nly under the most imperative of circumstances ... can the right to a jury trial be lost through prior determination of equitable claims." 359 U.S. at 510–11, 79 S.Ct. at 956–57. Similarly, in *Dairy Queen,* the Court noted that:

attempts were made indirectly to undercut [the right to a jury trial] by having federal courts in which cases involving·both legal and equitable claims were filed decide the equitable claim first. The result of this procedure in those cases in which it was followed was that any issue common to both the legal and equitable claims was finally determined by the court and the party seeking trial by jury on the legal claims was deprived of that right as to these common issues.

369 U.S. at 472, 82 S.Ct. at 897.

Relying on *Beacon Theatres* and *Dairy Queen,* we concluded prior to trial that Federal was entitled to a jury trial on the issue of reformation. After further consideration of the issue, we now conclude that our initial holding was erroneous and that Federal's claim must be determined by the court.

A situation nearly identical to that presented here occurred in *Enserch Corp. v. Shand Morahan & Co., Inc.,* 952 F.2d 1485 (5th Cir.1992). One of the issues in that case was whether the court should reform the insurance policies at issue, due to an alleged mutual mistake, to reflect that the parties had intended to limit the recovery for one claim under both policies to a maximum of $25 million. The trial court submitted the issue to a jury, which found that there was no mutual mistake. On motion for judgment n.o.v., the trial court disregarded the jury's verdict and held that the parties had intend-

trial decision. Giant Eagle's motion on this issue is in the nature of a request for reconsideration

and is not governed by Rule 50.

ed to limit the maximum recovery under both policies for a single claim.

On appeal, the Court of Appeals noted that "despite the apparent procedural posture of this case as an appeal from an order granting a motion for [JNOV], we believe this is in fact an appeal from an order granting reformation of an insurance policy." 952 F.2d at 1502 (brackets in original; quoting *Great Atlantic Insurance Co. v. Liberty Mutual Insurance Co.*, 773 F.2d 976, 978 (8th Cir. 1985)). In concluding that the trial court's findings should be reviewed under the "clearly erroneous" standard, the court stated that:

> We have rejected the assertion that the Seventh Amendment guarantees the right to a jury on a claim of mutual mistake seeking contractual reformation. Such a reformation is an equitable decision made by the court, not the jury, and the parties are not entitled to a jury trial even where there is conflicting evidence of historical facts. Moreover, the court is free to disregard the findings of an advisory jury.

*Id.*

In the case at bar, the sole issue at trial was whether the Giant Eagle D & O insurance policy should be reformed due to a mutual mistake of the parties. As rehearsed, Federal framed the issue thusly in its answer: "whether Endorsement 2 of the [D & O policy], *either as intended by the parties, reformed by the Court, or as set forth therein*, excludes coverage for the claims made against the Giant Eagle officers and directors [in the Phar–Mor litigation]." (emphasis added). Federal conceded at trial that the endorsement, "as set forth therein", did not exclude coverage for such claims. Furthermore, because language that limits coverage of an insurance policy must, under Pennsyl-

vania law, be clear and unambiguous to be enforceable, *Bishop v. Washington*, 331 Pa.Super. 387, 480 A.2d 1088, 1095 (1984); *Equibank v. State Farm Mutual Auto. Insurance Co.*, 426 Pa.Super. 354, 626 A.2d 1243, 1246 (1993), and since Endorsement No. 2 was neither, the "intention of the parties" with respect to Endorsement No. 2 is relevant only to prove mutual mistake as a basis for reformation.[2] We agree with Giant Eagle that reformation is purely an equitable issue and must be decided by the court rather than by a jury. *See, e.g., Royal Aviation, Inc. v. Aetna Casualty & Surety Co.*, 770 F.2d 1298, 1302 (5th Cir.1985).

■ Our initial decision to try the issue before a jury stemmed from the urgings of Federal and the Supreme Court's admonition that the right to a jury trial of legal issues, no matter how incidental to the equitable issues, must be preserved. *See Dairy Queen*, 369 U.S. at 470–71, 82 S.Ct. at 896. However, we now recognize that there are no issues which are common to both the equitable and legal claims, such that the findings in the equitable action would effectively preclude Federal's right to have a jury decide the legal claims. Indeed, although the declaratory action was brought by Giant Eagle, the sole issue that the parties agreed to litigate was actually a claim by Federal that the contract should be reformed due to a mutual mistake.[3] Thus, the action tried was merely "a counterpart of a suit in equity" upon which no right to a trial by jury exists. *Owens–Illinois*, 610 F.2d at 1189.

■ Finally, in *Dairy Queen*, the Supreme Court implicitly recognized that the defense of reformation, as a purely equitable remedy, should not be submitted to a jury:

---

2. There is no evidence to support, and we rejected at trial, Federal's alternative argument that the parties had limited coverage by way of an oral agreement. The evidence preponderates, and we find, that the written D & O policy was intended to incorporate the entire agreement as negotiated by the parties. In any event, the existence of an oral agreement was not an issue at trial since the parties stipulated that the only issue to be tried was whether Endorsement No. 2 limited coverage.

3. Although it could be argued that the claim for damages on a reformed contract is a legal claim which overlaps the equitable reformation claim, this argument has been rejected. *Royal Aviation*, 770 F.2d at 1302 ("A claim that a contract ... should be reformed [is] one for the court to decide.... If plaintiff seeks reformation and money damages on the contract as reformed, the court may decide whether to allow reformation but there is a right to a jury trial on the reformed contract." (brackets in original; quoting 9 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 2316)).

Nor is the legal claim here rendered 'purely equitable' by the nature of the defenses interposed by the petitioner. Petitioner's primary defense to the charge of breach of contract—that is, that the contract was modified by a subsequent oral contract—presents a purely legal question having nothing whatever to do either with novation, as the district judge suggested, *or reformation,* as suggested by the respondents here. Such a defense goes to the question of just what, under the law, the contract between the respondents and petitioner is and, in an action to collect a debt for breach of contract between these parties, petitioner has a right to have the jury determine not only whether the contract has been breached and the extent of the damages if any but also just what the contract is.

369 U.S. at 479, 82 S.Ct. at 900 (emphasis added). Here, there is no dispute over what the contract is—it is a written insurance policy. Rather, the dispute concerns Federal's contention regarding what the contract, and specifically, Endorsement No. 2, *was intended to be* were it not for the alleged mutual mistake. Therefore, while we recognize that a jury has traditionally been left with the function of determining whether a contract exists and whether that contract has been breached, it is the equitable function of the court to reform a written contract if the evidence so warrants. We hold that Federal has no right to a trial by jury with respect to the reformation issue.

■ Federal argues that, even if it has no right to a jury trial as a matter of law, it has a contractual right, pursuant to the stipulation, to try the disputed factual issues to a jury. We disagree. The Federal Rules of Civil Procedure provide that:

In all actions not triable of right by a jury ... the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

Fed.R.Civ.P. 39(c). Federal argues that paragraph 13 of the stipulation between the parties establishes Giant Eagle's consent to a jury trial. As stated, that paragraph provides that:

The parties agree that all issues of fact to be decided at time of trial which they are legally entitled to have decided by a jury shall be decided by a jury and not the court.

Unfortunately for Federal, this paragraph does not provide any greater right to a jury trial than is already provided by the Constitution and the federal statutes. Federal is not entitled to a jury trial on the factual disputes underlying its claim for reformation unless the resolution of such disputes would effectively foreclose Federal's right to try its legal claims to a jury. As rehearsed, that is not the case here, and we reject Federal's contention of jury trial by agreement.

In sum, we hold that Federal does not have the right to have its reformation claim tried to a jury, either as a matter of law or by agreement. In view of our holding, the verdict rendered by the jury in favor of Federal is nonbinding and advisory only and we will treat Giant Eagle's motion for judgment as a motion based on Fed.R.Civ.P. 52(c).

## II. REFORMATION CLAIM

We now turn to the merits of Federal's reformation claim. The directors and officers of Giant Eagle and Phar–Mor have been covered by D & O policies issued by Federal since 1984. From 1984 through 1991, Federal issued single policies to cover the directors and officers of both corporations. For the year 1991, the D & O policy purchased by the two corporations provided for a liability limit of $20 million. The premium paid for the 1991 D & O policy was $178,250.00.

During 1991, at the request of Giant Eagle and Phar–Mor, Federal agreed to issue separate D & O policies to cover the officers and directors of the two corporations. Under the new arrangement, the Giant Eagle D & O policy would cover the officers and directors of Giant Eagle and the Phar–Mor D & O policy would cover the officers and directors of Phar–Mor.

In negotiating for the insurance policies, Giant Eagle and Phar–Mor employed the insurance brokerage firm of Hilb, Rogal and Hamilton ("HRH"). Giant Eagle paid fees to

HRH for its services and HRH also received commissions for placing insurance policies for Federal. Testimony adduced at trial revealed that Giant Eagle relied almost exclusively on HRH to negotiate with the insurance companies on its behalf.

In February, 1992, Federal issued two D & O policies, one to Giant Eagle and the other to Phar–Mor. Each policy had a $20 million liability limit with an effective date beginning on January 14, 1992. The premium paid on the Giant Eagle policy was $157,430.00 and the premium paid on the Phar–Mor policy was $215,000.00. Thus, the total premium paid on the two policies equalled $372,430.00, over twice the premium paid by the corporations for the combined 1991 policy.

The Giant Eagle D & O policy issued by ·Federal contained numerous endorsements. Endorsement No. 2 of the policy, which is at the heart of this dispute, provides as follows:

It is understood and agreed that Item 6 of the Declarations Insured Organization, is amended to delete the following:

Phar–Mor, Inc. and Tamco, Inc.

It is further understood and agreed that Section 2–6 EXCLUSIONS, shall be amended by ·adding the following, but only as respects:

(e) Where all or part of such claim is, directly or indirectly based on, attributable to, arising out of, resulting from or in any manner related to the INSURED'S WRONGFUL ACT(S) committed, attempted or allegedly committed or attempted after January 14, 1992.

Neither party disputes that Endorsement No. 2 as written is nonsensical. The policy does not contain a section 2–6, as referenced in the endorsement. Moreover, a strict application of the endorsement as it appears on its face would effectively exclude all coverage for Giant Eagle's directors and officers, an "absurd" result that was clearly not the intention of the parties. *See Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 762 (3d Cir. 1985).

The confusion over the intent of the endorsement led Giant Eagle, through HRH, to seek clarification from Federal. On two occasions, once in April 1992 and the other in May 1992, HRH made a written request for clarification of the endorsement from John Burrows, the Federal manager responsible for the Giant Eagle and Phar–Mor policies. Federal did not respond to either request.

In August of 1992, Phar–Mor revealed the fraud which led to the commencement of the Phar–Mor MDL. As rehearsed, various civil actions in the MDL have named Giant Eagle and certain of its officers and directors as defendants. A number of Phar–Mor's officers and directors are also defendants in the MDL. In the face of these lawsuits, Giant Eagle sought coverage for its officers and directors under the Giant Eagle D & O policy. By letter dated September 29, 1992, Federal asserted that the Giant Eagle D & O policy excluded coverage for claims made against the Giant Eagle officers and directors which were attributable to conduct which was in any way related to Phar–Mor. In a letter dated September 2, 1993, Federal reiterated its assertion that the claims against Giant Eagle's officers and directors were not covered under the Giant Eagle policy and that Endorsement No. 2 excluded coverage of claims for conduct which was related to Phar–Mor. Federal stated that:

The intent of Endorsement No. 2 was that the limits of liability under the Giant Eagle and Phar–Mor policies would not be stacked on top of each other for common claims or common wrongful acts relating to Phar–Mor. Federal's maximum liability exposure under both policies for Phar–Mor related claims or wrongful acts was limited to $20 million collectively.

As rehearsed, Federal contends that, due to a mutual mistake of the parties, Endorsement No. 2 does not reflect the oral agreement reached between the parties and should be reformed to meet the mutual intent of the parties to cap liability at $20 million between the two policies for claims that are related to Phar–Mor.

■■■ Although "Pennsylvania courts have consistently held that it is not the province of the Court to alter a contract by construction or to make a new contract for the parties," *Twin City Fire Ins. Co. v. Pitts-*

*burgh Corning Corp.,* 813 F.Supp. 1147, 1149 (W.D.Pa.1992) (citing *Amoco Oil Co. v. Snyder,* 505 Pa. 214, 478 A.2d 795 (1984)), a court may reform a provision of a contract which has been "incorrectly or imperfectly expressed." *Id.* However, reformation is an equitable remedy that should be sparingly granted, and it "presupposes that a valid contract between the parties was created but, for some reason, was not properly reflected in the instrument that memorialized the agreement." *H. Prang Trucking Co. v. Local Union No. 469,* 613 F.2d 1235, 1239 (3d Cir.1980).

■ "To reform an instrument because of a mutual mistake of fact, it must be established that the parties had a precedent common intent that is not reflected by the instrument. Also, the actual intent of the parties must be shown." *Three–O–One Market, Inc. v. Com., Dept. of Public Welfare,* 64 Pa. Cmwlth. 237, 439 A.2d 909, 911 (1982). In order to establish a mutual mistake:

> the moving party is required to show by clear precise and indubitable evidence either fraud or mutual mistake. The meaning of this requirement is that [the moving party's] witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Furthermore, the evidence must be established by *two witnesses* or by one witness and corroborating circumstances.

*Patterson v. Reliance Ins. Cos.,* 332 Pa.Super. 592, 481 A.2d 947, 950 (1984) (quoting *Easton v. Washington County Ins. Co.,* 391 Pa. 28, 137 A.2d 332, 337 (1957); brackets supplied).[4] *See also, Stowe Township v. Standard Life Ins. Co.,* 507 F.2d 1332, 1337 (3d Cir.1975) (clear and convincing evidence

required for reformation); *Central Transportation, Inc. v. Board of Assessment Appeals,* 490 Pa. 486, 417 A.2d 144, 147–48 (1980) (same); *Blair v. Manhattan Life Ins. Co.,* 692 F.2d 296 (3d Cir.1982) (Pennsylvania's "two-witness rule" still applicable to reformation cases).

■ To warrant reformation, "it is necessary that the mistake as well as the actual intent of the parties be clearly shown." *Hassler v. Mummert,* 242 Pa.Super. 536, 364 A.2d 402, 403 (1976) (reformation of deed). The Superior Court also discussed the standard for reformation in *Dudash v. Dudash,* 313 Pa.Super. 547, 460 A.2d 323 (1983), and stated that:

> A party who seeks reformation on the ground of mutual mistake must establish in the clearest manner that the intention proffered as the basis for reformation of the deed existed and continued concurrently in the minds of the parties down to the time of the execution of the deed. If the evidence justifies such a finding of the intention of the parties, this finding may be made by the Chancellor even though it is expressly denied by one of the parties.

460 A.2d at 326–327 (citations omitted). In other words, a party seeking reformation must establish both the existence of the mistake and the true intention of the parties by clear and convincing evidence.[5]

■ At trial, Federal objected to the application of the "clear, precise and convincing" standard and urged that we apply the lesser "preponderance of the evidence" standard. Indeed, Federal downplayed the significance of the mutual mistake issue, noting that the existence of a mutual mistake was obvious on the face of Endorsement No. 2. Federal asserted that the relevant issue was whether the oral agreement reached between Federal and Giant Eagle before the agreement was reduced to writing included a capping of the liability limit to a total of $20

---

4. Although we note that this passage speaks in terms of the sufficiency of the evidence as presented to a jury, it in no way undercuts our ruling that the instant action is purely equitable in nature and must be tried to the court.

5. The fact that the *Hassler* and *Dudash* cases were both concerned with the reformation of a deed is not relevant to our analysis. We are not aware of any Pennsylvania courts which have held that the law of reformation as applied to deeds is different than the law as applied to contracts.

million, under both policies combined, for claims related to Phar–Mor. Although we disagree and hold that the clear and convincing evidence standard is applicable, we find that Federal has failed to establish, under either evidentiary standard, that the parties agreed that the directors and officers of Giant Eagle *and* Phar–Mor would be insured under a single limit of $20 million for claims related to Phar–Mor.

In analyzing Federal's claim, we must remain cognizant of the true nature of the action, to-wit, a *post hoc* attempt by an insurer to limit coverage of an insurance policy where the policy on its face does not contain such a limitation. We must also remember that exclusions attempting to limit coverage must be, under Pennsylvania law, clear and unambiguous to be enforceable. Because we find that Federal's assertion that the parties mutually agreed to and intended to include in the Giant Eagle D & O policy a restriction, for claims common to or related to Phar–Mor, is not supported by the evidence, we will reject Federal's claim for reformation.

The only evidence Federal adduced at trial to support its contention was the testimony of John Burrows. Burrows testified that, in the negotiations between Federal and Giant Eagle, the concepts of "capping of limits, non-pyramiding of limits" were discussed. Burrows stated at trial that the parties agreed that Federal would write separate policies of $20 million for Giant Eagle and Phar–Mor, but that there would be a single limit of liability of $20 million under both policies for common or related claims. However, in our judgment, Burrows' testimony was inconsistent, equivocal and less than persuasive.

Federal has provided no other evidence to support Burrow's contention. None of the other individuals involved in the negotiations, Loretta Stanish of Giant Eagle, William Shoemaker of HRH, and Marci Nelson of Federal, testified that there was an agreement to a $20 million cap on common or related claims. Stanish steadfastly denied

that capping of limits was ever discussed, and Shoemaker testified only that the parties intended to and did enter into a "non-stacking" or "non-pyramiding" arrangement, a proposition which, as explained below, is distinct from the cap on liability as urged by Federal. Nelson's testimony is consistent with Shoemaker's.

Based on the testimony adduced at trial, we find that Giant Eagle and Federal orally agreed to a "non-stacking" endorsement, but that the parties did not agree to cap the combined limit on common and related claims at $20 million. Federal relies heavily on the testimony of Shoemaker to establish that Giant Eagle agreed to a capping of limits.[6] However, Shoemaker never testified that he agreed on behalf of Giant Eagle and Phar–Mor to a capping of limits or that such a subject was ever discussed. He also spelled out how the non-stacking endorsement was to apply:

Q. Are you saying it was your understanding that if a Giant Eagle D & O is sued as a Giant Eagle D & O, and that same person was a Phar–Mor D & O and he was also sued as a Phar–Mor D & O, that one individual who is a director/officer for both corporations would have two $20 million policies covering him?

A. Yes.

Q. So he would have $40 million coverage in total?

A. No.

Q. All right. What coverage would he have in total?

A. He would have $20 million in his capacity as a Giant Eagle D & O, and he would have $20 million in his capacity as a Phar–Mor D & O.

Q. It was your understanding that that would not constitute pyramiding the policies?

A. That's correct.

Shoemaker Depo. at 109–110. Therefore, although Shoemaker acknowledged that the

---

6. Apparently, neither Shoemaker nor Nelson were within the court's subpoena power and they did not appear or actually testify at trial. However, both individuals had been previously deposed in this matter and portions of their depositions were read into the record.

parties had agreed to a "non-pyramiding" of limits endorsement, he interpreted the endorsement to mean only that both policy limits would not apply to the same claim. In other words, a director or officer of both companies who is sued only in his capacity as a Giant Eagle director or officer would have only $20 million of insurance under the Giant Eagle D & O policy, and he would not be covered under the Phar–Mor D & O policy. However, if he were sued in *both* capacities, he would be entitled to $20 million in coverage under the Phar–Mor D & O policy for the claims made against him as a Phar–Mor director and officer, and he would be entitled to $20 million in coverage under the Giant Eagle D & O for claims made against him as a Giant Eagle officer or director.

Marci Nelson's testimony at her deposition is consistent with that of Shoemaker. Nelson testified as follows:

Q. If there's a suit against Giant Eagle, assuming the scenario of a no-stacking endorsement which you say is what was intended in this scenario,—

A. Correct.

Q. —and assuming that it would be written in a way that clearly would express that intent, and there's a lawsuit against Giant Eagle arising out of the wrongful acts of Phar–Mor, would there be a total of $20,000,000 coverage available between the Phar–Mor and Giant Eagle policy?

A. Not between them, no. There is no between at that point. They had their own policies. If it would have happened after January 14th of 1992,—

\* \* \* \* \* \*

Q. —excuse me. If Giant Eagle was sued for some wrongful act as a result of Phar–Mor's operations?

A. Yes.

A. Then it would fall under Giant Eagle's $20,000,000 limit. It could not go into Phar–Mor because Giant Eagle is the name insured on the dec page. Phar–

Mor would have to have their own separate suit and that would apply to their own policy.

Nelson Depo. at 145–46. Nelson's testimony is directly at odds with the position now taken by Federal that the Giant Eagle D & O policy was intended to exclude Phar–Mor related claims. Federal suggests that we should disregard Nelson's testimony because she was a "low level trainee" at the insurance company who was "apparently confused." This portrayal is belied by the fact that Nelson's testimony is consistent with Shoemaker's, which we find to be credible.

In short, while we find that the testimony established that the parties contemplated and agreed upon a non-stacking endorsement to the Giant Eagle D & O policy, Federal is not entitled to the relief that it seeks. There is no evidence, other than the less than impressive testimony of Burrows, that the parties agreed to cap the limit between the two policies to $20 million on claims related to Phar–Mor.[7] And even if we were to accept Burrow's testimony that Federal intended, through Endorsement No. 2, to cap the limit between the policies at $20 million, a proposition that is belied by Nelson's testimony, there is no evidence to establish that Giant Eagle, either through Stanish or HRH, ever agreed to such a limitation.

The total premiums paid by the corporations for the two policies also militates against a finding of a cap. For 1991, the two corporations paid a total of $178,250.00 for a single D & O policy with a liability limit of $20 million. Thus, in 1991, every officer and director of both corporations had a total of $20 million in coverage. In 1992, the total premiums paid on the two policies was $372,430.00, over twice the premiums paid in 1991. However, were we to accept Federal's position, there would be no significant increase in coverage and the directors and officers of the two corporations would still have only $20 million in coverage. Indeed, a number of the officers of Giant Eagle who did not hold positions with Phar–Mor would be left unin-

7. We note that the opinions of the expert witnesses provided by the parties showed only that there are divergent views in the insurance industry as to the meaning and effect of "non-stack-ing" or "non-pyramiding" provisions. Thus, we are left with the intentions of the parties to determine how such a provision was intended to apply in the Giant Eagle D & O policy.

sured if the claims brought against them were related to Phar–Mor.[8]

In our view, Giant Eagle and Phar–Mor had a reasonable expectation that, when they requested separate policies and paid twice the amount in premiums as they had the year before, they were receiving substantially greater insurance coverage. If in fact Federal intended to cap the liability for common or related claims, it had a duty as the carrier to clearly notify its insureds of this intent. As the Court of Appeals stated in *Bensalem Tp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303 (3d Cir.1994), "an insurer may not make unilateral changes to an insurance policy unless it both notifies the policyholder of the changes *and ensures that the policyholder understands their significance.*" 38 F.3d at 1311 (emphasis added). Here, Federal did not adequately convey its intention to cap the limit for common claims, if that was indeed its intent, as is evidenced by the testimony at trial and by the fact that Giant Eagle twice requested clarification of the endorsement in question. We will not now allow Federal "to reap the benefit of the insured's lack of understanding of the transaction" by avoiding liability. *Id.* at 1312 (quoting *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346, 1353 (1978) and *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920, 926 (1987)).

In conclusion, Federal has failed to show that the parties mutually agreed to cap the limit for claims related to Phar–Mor to $20 million between the two D & O policies by either clear and convincing evidence or by a preponderance of the evidence. Federal's request for reformation will be denied.[9]

An appropriate order follows.

### ORDER OF COURT

IT IS ORDERED that the motion (document no. 42) of plaintiff, Giant Eagle, Inc., for judgment as a matter of law pursuant to Fed.R.Civ.P. 52(c) be and hereby is granted.

IT IS FURTHER ORDERED that the following declaratory judgment be and hereby is entered in favor of Giant Eagle and against Federal Insurance Company:

It be and hereby is declared that Federal Insurance Company may not continue to deny coverage to the directors and officers of Giant Eagle, in their capacities as directors and officers of Giant Eagle, under Executive Liability and Indemnification Policy No. 8109–07–36–D for reasons related to Endorsement No. 2 in the policy or on the basis of an alleged oral agreement to cap limits on claims related to Phar–Mor, Inc.

---

8. Although Burrows testified that it was the position of Federal that the Giant Eagle directors and officers would be covered under the Phar–Mor policy, there is no provision in that policy which either requires or allows Federal to take such position.

9. Because the finding of the jury is advisory and non-binding on the court, we will file separately our findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).