# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————————

No. 96-1873

—————————

Northgate Homes, Inc.,       *
      *
      Appellant,       *
      * Appeal from the United States
      v.       * District Court for the
      * District of Minnesota
City of Dayton, a       *
municipal corporation,       *
      *
      Appellee.       *

—————————

Submitted:    December 9, 1996

Filed:     October 8, 1997

—————————

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

—————————

McMILLIAN, Circuit Judge.

      Northgate Homes, Inc. (Northgate), appeals from a final judgment entered in the United States District Court[1] for the District of Minnesota granting declaratory and injunctive relief to the City of Dayton (City) upon holding that Northgate's sale, display, and storage of manufactured homes on a particular parcel of land constitute an

———————————

[1]Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

unlawful nonconforming use.[2] <u>Northgate Homes, Inc. v. City of Dayton</u>, No. 3-94-178, slip op. at 13 (D. Minn. Mar. 12, 1996) (memorandum and order following bench trial). For reversal, Northgate argues that the district court erred in: (1) granting the City's request for a bench trial on the parties' cross-claims, including claims for declaratory relief, <u>id.</u> (Feb. 2, 1996); (2) holding that Northgate's use is an unlawful nonconforming use, <u>id.</u> (Mar. 12, 1996); and (3) granting the City summary judgment on Northgate's claims of equitable estoppel, breach of contract, due process violations, commerce clause violations, and an unlawful taking without just compensation, <u>id.</u> (Jan. 23, 1996). Upon careful consideration and for the reasons discussed below, we affirm the judgment of the district court.

Jurisdiction was proper in the district court based upon 28 U.S.C. § 1343. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure.

## I. BACKGROUND

Northgate operates a retail business selling manufactured or mobile homes[3] on the premises of a residential mobile home park called Dayton Park (hereinafter "the Dayton Park property") located in the City of Dayton, Minnesota. Ben Dehn and George Hedlund originally developed the Dayton Park property in 1958, pursuant to a permit issued by the City. At that time, the zoning ordinance governing the establishment of mobile home parks did not prohibit the sale of mobile homes on

---

[2]The district court also denied declaratory and injunctive relief to Northgate on the identical issue. <u>Northgate Homes, Inc. v. City of Dayton</u>, No. 3-94-178, slip op. at 13 (D. Minn. Mar. 12, 1996).

[3]The terms "manufactured home" and "mobile home" are used interchangeably herein.

mobile home park property.  Beginning in 1969, Dehn and Hedlund sold the Dayton Park property to Kent Kjellberg.  Kjellberg thereafter incorporated Dayton Park, Inc.

In 1973, the City passed Ordinance 73-5 and Ordinance 73-6.  One of the numerous subdivisions of Ordinance 73-5 prohibits the sale, storage, or display of mobile homes on mobile home park premises.  Ordinance 73-6 includes the zoning regulations for areas designated as "R-M" (referring to "residential-mobile").  Neither the sale, storage, nor display of mobile homes is a permitted or conditional use in an area zoned R-M.  See Appellee's Appendix at 138 (Ordinance No. 73-6).

In October 1973, the City brought a suit in Minnesota state court against Dayton Park, Inc., for violating Ordinance 73-5.  The parties to that state court action stipulated and agreed that the City would issue Dayton Park, Inc., a special use permit allowing it to continue its then-current operations.  Appellant's Appendix at 207-12 (Defendant's exhibit 16 (stipulation and agreement dated April 22, 1974)).  The state court incorporated the stipulation into an order directing the City to issue to Dayton Park, Inc., the special use permit.  Id. at 206 (state court order dated April 30, 1974).  In 1977, the State of Minnesota sued Dayton Park, Inc., in state court for violating Ordinance 73-5.  The state court in that action held that the 1974 state court order granted Dayton Park, Inc., the variances necessary to continue its operations as they existed on April 30, 1974.

At some point around the mid-1970s, Joel Dunn began selling manufactured homes under the name Black Forest, Inc., from a nine-acre sales lot located on the Dayton Park property.  The nine-acre parcel is in an area zoned R-M.  In 1978, Dunn reincorporated Black Forest Homes, Inc., as Northgate Homes, Inc.  On August 3, 1990, Kathy Greenberg purchased all of Northgate's stock and became its sole owner.  Thereafter, Northgate's sales volume, sales staff, and number of display homes exhibited on the sales lot increased dramatically.

In a letter to Northgate dated January 14, 1992, an attorney representing the City stated:

> It has come to my attention that you have created a sales lot on your property with 20 plus manufactured homes stored in the open area. . . . This is not a permitted use by City Ordinance. I have enclosed a copy of the Ordinance and Zoning Map. Your property is zoned R-M.
>
> The use as a sales lot and storage of homes must be discontinued by March 1, 1992.
>
> A copy of this ordinance will be sent to the City Attorney George Hoff for his information on this matter.

Upon receipt of this letter, Northgate did not discontinue its sales activities on the Dayton Park property. The City agreed not to enforce its zoning ordinances while Northgate applied for a zoning amendment or a conditional use permit (CUP) that would permit its sales operation to continue. After a series of Dayton City Council meetings and public hearings, Northgate's application was denied on June 7, 1993. On February 7, 1994, the City sent Northgate a letter stating that Northgate had until March 8, 1994, to cease its mobile home sales operations on the Dayton Park property and to remove all evidence of the business.

Northgate filed a § 1983 claim against the City in state court and sought injunctive relief. The City removed the case to federal court. Subsequently, Northgate filed an amended complaint seeking declaratory judgment that Northgate's mobile home sales business is a lawful nonconforming use of the Dayton Park property. Northgate claimed that the City's actions amounted to a taking of Northgate's property interest in its business without just compensation, in violation of the Fifth Amendment of the United States Constitution. Additionally, Northgate asserted due process claims

-4-

under the United States Constitution and the Minnesota constitution, a commerce clause claim, a breach of contract claim, and an equitable estoppel claim. In its answer to Northgate's amended complaint, the City asserted counterclaims seeking declaratory judgment that Northgate's sales and storage of mobile homes on the Dayton Park property constituted an unlawful nonconforming use of the property and requesting that Northgate be enjoined from continuing its business operations at that site.

The City moved for summary judgment. The district court granted the City's motion in part and dismissed most of Northgate's claims. Remaining for trial were the parties' cross-claims for declaratory and injunctive relief on the nonconforming use issue. The City then filed a motion for a trial to the court, which the district court granted. Following a bench trial, the district court rendered the following findings of fact and conclusions of law: Ordinance 73-6 is constitutional and binding[4]; Northgate's sales operations within the nine-acre sales lot zoned R-M violate Ordinance 73-6; such sales operations were non-existent at the time Ordinance 73-6 became effective; and Northgate's operations on the sales lot therefore constitute an unlawful nonconforming use. Accordingly, the district court permanently enjoined Northgate from operating its sales lot for the sale, display, or storage of manufactured homes in the area of the Dayton Park property zoned R-M. In addition, the district court ordered each party to pay its own costs and attorneys' fees. This appeal followed.

---

[4]The district court declined to address the constitutionality of Ordinance 73-5 because it found it unnecessary to consider any alleged violations of Ordinance 73-5 in disposing of the case. Slip op. at 4-5 n.1 (Mar. 12, 1996).

II.   DISCUSSION

Denial of jury trial

Northgate argues that the district court violated its Seventh Amendment right to a jury trial by granting the City's motion for a trial to the court.  The district court granted the motion upon concluding that any right Northgate had to a jury trial was lost once Northgate's common law damages claims and § 1983 claims were dismissed on summary judgment, leaving only equitable claims for declaratory and injunctive relief.

Federal procedural law governs the question of whether Northgate has a right to a jury trial on its claim for declaratory judgment.  Simler v. Conner, 372 U.S. 221, 222 (1963) (per curiam).  A litigant is not necessarily deprived of a jury trial merely because it is a party to a declaratory judgment action.  Id. at 223.  Although the declaratory judgment procedure largely originated in equity, declaratory relief per se is neither legal nor equitable.  The fact that a declaratory judgment is sought neither restricts nor enlarges any right to a jury trial that would exist if the issue were to arise in a more traditional kind of action for affirmative relief.  Id.  To determine whether there is a right to a jury trial in a declaratory judgment action, it is necessary first to determine the nature of the action in which the issue would have arisen absent the declaratory judgment procedure.  In other words, if there would have been a right to a jury trial on the issue had it arisen in an action other than one for declaratory judgment, then there is a right to a jury trial in the declaratory judgment action; conversely, there is no right to a trial by jury if, absent the declaratory judgment procedure, the issue would have arisen in an equitable proceeding.  Johnson v. Fidelity & Casualty Co., 238 F.2d 322 (8th Cir. 1956) (Johnson) (cited in Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 504 (1959)); accord Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1189 (3d Cir. 1979).

In the present case, we are of the opinion that Northgate's claim, in the absence of the declaratory judgment procedure, would have arisen in an action to enjoin the City from enforcing its zoning ordinances. Thus, using the <u>Johnson</u> analysis, we conclude that Northgate is not entitled to a jury trial because its claim would have been an equitable claim. Moreover, a judgment in favor of Northgate on its declaratory judgment claim would have had the effect of preventing, or enjoining, the City from enforcing the demand that Northgate cease its use of the nine-acre parcel, zoned R-M, for selling and storing mobile homes on the Dayton Park property.

We are also of the opinion that the City, in the absence of the declaratory judgment procedure, would at most have attempted to enforce its cease and desist order by seeking injunctive relief. On this point, we disagree with Northgate's assertions that the City would have criminally prosecuted Northgate for violating the zoning ordinances and, thus, Northgate's declaratory judgment action must be viewed as an "inverted criminal prosecution" to which a jury right attaches under the Sixth Amendment. The district court reasoned, and we agree, that there simply is no indication here that the City had any intention of criminally prosecuting Northgate, notwithstanding the City's efforts to criminally prosecute other entities in the past for violating Ordinances 73-5 and 73-6. Slip op. at 3 (Feb. 2, 1996). Prior to Northgate's filing of the present lawsuit, the City's actions vis-a-vis Northgate were focused entirely upon stopping Northgate's current and future violations, not punishing Northgate's past violations. <u>Id.</u> Thus, because the likelihood of an eventual criminal prosecution is at best purely speculative, we agree with the district court's holding that Northgate is not entitled to a jury trial based on its "inverted criminal prosecution" theory. <u>Id.</u>

We also reject Northgate's arguments that it is entitled to a jury trial because it requested attorneys' fees and costs or because factual issues are vigorously disputed. As the district court explained, even assuming that attorneys' fees and costs could have been recovered in the present case (an assumption which the City disputes),

Northgate's request for such fees and costs does not alter the fundamentally equitable nature of its claim for declaratory judgment. See, e.g., Doucas Volkswagen, Inc. v. Volkswagen of America, Inc., 893 F. Supp. 15, 16 (E.D. Wis. 1995) (rejecting the plaintiff's request for a jury trial in a declaratory judgment action and holding that plaintiff's request for attorneys' fees and costs did not alter the equitable nature of its action even though the underlying statute contained an attorneys' fees provision) (citing FDIC v. Sanders, 785 F. Supp 528, 529 (W.D. Pa. 1992)).  Nor is Northgate entitled to a jury trial merely because of the intensity of factual disputes.  In sum, we hold that the district court did not err in the present case, under either the Constitution or statutes of the United States, in granting the City's request for a bench trial on the parties' claims for declaratory and injunctive relief.

Disposition of nonconforming use issue on the merits

"A residential zoning ordinance may constitutionally prohibit the creation of uses which are nonconforming, but existing nonconforming uses must either be permitted to remain or be eliminated by use of eminent domain." County of Freeborn v. Claussen, 203 N.W.2d 323, 325 (Minn. 1972) (citing Hawkins v. Talbot, 80 N.W.2d 863 (Minn. 1957)).  The law does not require that pre-existing nonconforming uses be allowed to expand or enlarge.  Id.  Rather, to further the public policy interests underlying comprehensive zoning plans, the law disfavors the expansion or enlargement of pre-existing nonconforming uses and instead favors the gradual elimination of such uses through obsolescence, exhaustion, or destruction. Id.  The party seeking to continue a nonconforming use bears the burden of proving that an exception is warranted.  See, e.g., id. at 326 (in action by county to restrain property owner from constructing commercial building on land zoned residential, property owner bore burden of proving that enforcement of zoning ordinance violated property owner's due process rights).

In the present case, the area which Northgate uses as its sales lot is zoned R-M (residential-mobile), a zoning designation which does not permit the sale, storage, or display of mobile homes for commercial purposes. Therefore, in order to prevail, Northgate was required to prove that its predecessor was using the same sales lot to sell, store, and display mobile homes at the time Ordinance 73-6 became effective. At trial, Northgate maintained that, at the time Ordinance 73-6 became effective, Northgate's predecessors, Dayton Park, Inc. (owned and operated by Kent Kjellberg) and Black Forest Homes, Inc. (owned and operated by Joel Dunn), were engaged in selling, storing, and displaying mobile homes on the Dayton Park property at the same location and within the same geographical area as that from which Northgate presently operates its retail business. However, based upon the evidence adduced at trial, the district court specifically found that no business operation similar to Northgate's existed at the same location at the time Ordinance 73-6 went into effect. On appeal, Northgate specifically challenges this finding. Northgate summarizes its argument on this issue as follows:

> The District Court's findings are clearly erroneous for two reasons. First, the testimony at trial demonstrated that Northgate's Sales Lot was used for the display, storage and sale of manufactured homes prior to the enactment of the City's ordinances prohibiting such a use. Second, the evidence which the Court relied on is either inconclusive or in one case, nonexistent.

Brief for Appellant at 29.

We review the district court's findings of fact for clear error. Fed. R. Civ. P. 52(a). In the present case, the district court provided a detailed summary of the evidence upon which it relied in making its factual findings. See slip op. at 5-11 (Mar. 12, 1996). Northgate presented the testimony of three individuals to show that its

current sales lot, the nine-acre parcel on the Dayton Park property, was used for the sale, display, and storage of mobile homes prior to August 1, 1973. Kjellberg, whose deposition testimony was admitted into evidence, stated that he displayed manufactured homes on the entire nine-acre parcel in the early 1970s. Two other witnesses also testified that they remember seeing mobile homes displayed on that nine-acre parcel as early as 1971 or 1972. By contrast, however, the Dayton City Administrator testified that she never saw manufactured or mobile homes displayed on the nine-acre parcel during the 1970s.

In addition, numerous aerial photographs of the Dayton Park property were introduced into evidence at trial. The City introduced photographs which were taken on: November 9, 1971; November 1, 1975; May 13, 1978; November 18, 1979; April 5, 1980; April 10, 1985; and May 3, 1989. Defendant's exhibits 6, 17, 18, 19, 21, 24, and 29. Northgate submitted aerial photographs taken on May 8, 1960, and April 23, 1962. Plaintiff's exhibits 191 and 190. The pre-1985 photographs show that manufactured homes were not displayed anywhere on the nine-acre parcel at the times the photographs were taken. In fact, the photographs suggest that no mobile homes were displayed on that parcel until 1989. Moreover, in a 1971 photograph, approximately half of that parcel appears to be occupied by a softball diamond. Defendant's exhibit 6. The softball diamond also appears at the same location in the 1975 and the 1978 photographs, but apparently was not in use at those times. Defendant's exhibits 17 and 18. Contrary to Northgate's assertion that the photographs only show the condition of the sales lot in the late fall or the early spring, when mobile home inventories are at their lowest levels, Kathy Greenberg testified that the number of display homes on Northgate's sales lot is usually at its peak from March through November or December -- a period which includes the dates on which most of the photographs were taken. Kjellberg testified in his deposition that, on the rare occasions when there would be no inventory, such circumstances would probably last no more than a week. Based upon the evidence, the district court reasoned: "[i]t seems highly unlikely that so many photo[graph]s would show no manufactured homes on

-10-

Northgate's current sales lot if the property were being used regularly to display mobile homes, as Northgate claims." Slip op. at 9 (Mar. 12, 1996).

The district court also found compelling the language of the stipulation which was incorporated into the state court order disposing of the 1974 lawsuit brought by the City against Dayton Park, Inc. (Kjellberg's corporation) for violations of Ordinance 73-5. The stipulation specifically distinguishes the subdivisions of Ordinance 73-5 with which Dayton Park, Inc., was in compliance from those subdivisions of Ordinance 73-5 with which Dayton Park, Inc., was not in compliance, for purposes of granting a variance for the pre-existing nonconforming uses. Notably, the subdivision of Ordinance 73-5 which prohibits the sale or storage of mobile homes on mobile home park premises is found in the list of subdivisions with which Dayton Park, Inc., was deemed to be in compliance. Defendant's exhibit 16. The district court thus concluded that "[t]he most plausible inference to be drawn from the stipulation is that the City and Kjellberg both understood in April 1974, when the stipulation was signed, that sales or storage activities were not taking place on the Dayton Park premises, including Northgate's current sales lot." Slip op. at 10 (Mar. 12, 1996).

We hold that the evidence discussed above, along with additional evidence discussed in the district court's memorandum and order, demonstrates that the evidence presented by Northgate was at the very least contradicted by evidence presented by the City and certainly not conclusive on the issue of whether mobile homes were being displayed and sold on Northgate's current sales lot at the time Ordinance 73-6 went into effect. As the district court observed, whereas the City provided the court with tangible, physical, and documentary evidence of non-use, Northgate provided only testimonial evidence to the contrary. Id. at 12. Notably, Northgate recognizes on appeal that the determination of factual issues in the present case necessarily involved "an analysis of the credibility of the witnesses and the evaluation of direct and circumstantial evidence." Brief for Appellant at 22. When a trial court's findings of fact are based upon its decision to credit the testimony of a witness or witnesses, each

of whom has told a coherent and facially plausible story which is not contradicted by extrinsic evidence, the trial court's findings, unless internally inconsistent, can "virtually never" be clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985). Similarly, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 574; see also Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723, 729 (8th Cir. 1995) ("[w]e are bound by the district court's assessment of the witnesses' credibility and its determination of the weight of their testimony"). Bearing these standards in mind, we defer to the district court's assessment of the witnesses' credibility and the inferences to be drawn from the evidence and hold that the district court did not clearly err in finding that Northgate's predecessors did not use the nine-acre sales lot for retail sales operations prior to the effective date of Ordinance 73-6.

We also find no merit to the legal arguments advanced by Northgate to challenge the district court's disposition of the nonconforming use issue. Northgate primarily contends that the district court erred in failing to recognize that a pre-existing use that is seasonal or fluctuating is nevertheless sufficient to establish its lawfulness even to the extent that it may later become year-round or continuous. Brief for Appellant at 27-29 (citing Morin v. Board of Appeals, 227 N.E.2d 466 (Mass. 1967)). In the present case, it is abundantly clear that the district court simply concluded that the retail sales operations conducted by Northgate's predecessors on the nine-acre sales lot did not commence until after the effective date of Ordinance 73-6. See slip op. at 1, 6-11 (Mar. 12, 1996). Therefore, Northgate's argument is misplaced.

In sum, we hold that the district court did not err in holding that Northgate's mobile home retail sales operations, which are conducted in an area of the Dayton Park property zoned R-M, constitute an unlawful nonconforming use.

-12-

III.  CONCLUSION

For the reasons discussed above, we affirm the district court's grant of the City's request for a bench trial and affirm the district court's disposition of the parties' claims for declaratory and injunctive relief on the nonconforming use issue.  In addition, we have considered all of Northgate's remaining arguments, including the arguments that: the City's zoning ordinances are unconstitutional; the City is equitably estopped from enforcing its ordinances after failing to do so for many years[5]; and the district court erred in granting summary judgment on Northgate's takings claim, due process claims, commerce clause claim, and breach of contract claim.  Upon careful review of the record, the district court's orders, and the parties' briefs and oral arguments on appeal, we are of the firm conviction that none of those arguments has sufficient merit to warrant further discussion.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

_____

[5]See SLS Partnership v. City of Apple Valley, 511 N.W.2d 738, 743 (Minn. 1994) (holding that city could not be estopped from enforcing area and setback requirements set forth in one of its ordinances, even if property owner detrimentally relied on city's prior conduct).