**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 17 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD MANNING,

       Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

       Defendant-Appellee.

No. 96-2258

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-95-19-BB)

---

Peter V. Domenici, Jr., Dolan & Domenici, P.C., Albuquerque, New Mexico, for
Plaintiff-Appellant.

John W. Zavitz, Assistant United States Attorney, (John J. Kelly, United States
Attorney), United States Attorney's Office, Albuquerque, New Mexico, for
Defendant-Appellee.

---

Before **ANDERSON, LOGAN,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Richard Manning appeals from the district court's grant of declaratory and injunctive relief to the United States. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court affirms.

## I. BACKGROUND

Manning owns an ore-processing plant located on an unpatented millsite within the boundaries of the Gila National Forest. Manning has operated this facility since 1978. On October 5, 1993, two employees of the United States Forest Service inspected Manning's millsite after entering the site through the locked fence surrounding the ore-processing facility.

Manning filed this action in January 1995 as a civil rights complaint, seeking declaratory and monetary relief against the two Forest Service employees as well as one New Mexico state employee based on their allegedly unauthorized inspection of the millsite. Manning subsequently voluntarily dismissed the claim for monetary relief against the individual federal employees and dismissed all his claims against the state employee, leaving only claims for declaratory and injunctive relief against the federal employees in their official capacities. In his complaint, Manning requested the court to "declare that Defendants must honor and observe the Fourth Amendment to the United States Constitution in gaining access to and searching Plaintiff's mill site and buildings, and must do so by first

obtaining a warrant based upon probable cause or by complying with the guidelines for administrative and regulatory searches . . . ."

The United States answered as the real party in interest and was substituted as the named Defendant. The United States also asserted a counterclaim for declaratory and injunctive relief against Manning, requesting that Manning be required to provide the Forest Service with a key to the millsite and requesting that Manning be enjoined from any further operations at the site until the Forest Service had approved a new plan of operations, or a plan for reclamation if operations had ceased, and until Manning had provided the necessary bond. In the counterclaim, the United States asserted that although the Forest Service originally approved Manning's operating plan in 1978, Manning had substantially modified operations at the millsite since that time. The United States claimed that the "modified operations ha[d] not been approved by the Forest Service and are not in compliance with the previous approved plan of operations."

In response, Manning claimed he had modified and updated the original operating plan "without objection from the Forest Service." Manning further requested that the court "declare that his operating plan was updated, modified and supplemented in 1985 and remains valid and in full force and effect through the year 2000."

The district court granted Defendant's motion for partial summary judgment insofar as it required Manning to provide the Forest Service with a key allowing access to the area surrounding the mill, although the court stated that Manning could separately lock the mill buildings and was not required to provide the Forest Service with unrestricted access to the mill. Following the trial, the court awarded declaratory judgment in favor of Defendant, holding that no valid plan of operations was in effect and that no Fourth Amendment violation occurred.

On appeal, Manning asserts (1) the district court erred in striking Manning's jury demand for his claims under the Declaratory Judgment Act; (2) the district court erred in refusing to grant Manning's motion to amend his counterclaim to add damage claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680; (3) a number of the district court's factual findings are clearly erroneous; (4) a number of the district court's legal conclusions are contrary to law; (5) the district court erred in determining that the Multiple Use Mining Act of 1955, 30 U.S.C. § 601, *et seq.*, applies to unpatented millsite claims.

## II. ANALYSIS

### A. Denial of Jury Trial

Manning first asserts the district court erred in denying his demand for a jury trial for his claims under the Declaratory Judgment Act. This court reviews de novo the trial court's determination that Manning was not entitled to a jury trial. *See Bowdry v. United Airlines, Inc.*, 58 F.3d 1483, 1489 (10th Cir. 1995).

Manning notes that the Declaratory Judgment Act "preserves the right to jury trial for both parties" and asserts the district court therefore erred in refusing to grant a jury trial for the factual issues raised by his claims under this Act. In so arguing, Manning is apparently suggesting that the Declaratory Judgment Act provides a right to a jury trial whenever a party is seeking declaratory relief and there are factual issues to be determined.[1]

Manning is correct in asserting that the Declaratory Judgment Act preserves the right to a jury trial. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959); *see also Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1098-99 (8th Cir. 1997) ("A litigant is not necessarily deprived of a jury trial merely because it is a party to a declaratory judgment action."); *Hargrove v. American Cent. Ins. Co.*, 125 F.2d 225, 228 (10th Cir. 1942) (stating that use of "[t]he procedural remedy afforded by the Declaratory Judgment Act . . . does not alter or invade the right of trial by jury as at common law"). Nevertheless, "[s]eeking

---

[1]Manning has not identified any other statute which provided him with a right to a jury trial in this case.

declaratory relief does not entitle one to a jury trial where the right to a jury trial does not otherwise exist." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 662 (6th Cir.), *cert. denied*, 117 S. Ct. 49 (1996).

Whether Manning is entitled to a jury trial under the Seventh Amendment depends on whether his action is equitable or legal in nature. *See Bowdry*, 58 F.3d at 1489. Actions at law entitle the parties to a jury, but equitable cases do not. *See id.* "Declaratory relief may be legal or equitable depending on the basic nature of the underlying issues." *United States v. New Mexico*, 642 F.2d 397, 400 (10th Cir. 1981); *see also Northgate Homes, Inc.*, 126 F.3d at 1099. In this case, Manning's action was equitable in nature. Manning was not requesting monetary damages, but was seeking only equitable relief in the form of a declaratory judgment and injunction. The fact that he requested a declaratory judgment, in connection with the injunctive relief, did not alter the basic equitable nature of his action. *See Robinson v. Brown*, 320 F.2d 503, 505 (6th Cir. 1963) ("The inclusion of a claim for declaration of rights in the complaint did not . . . convert an equity case into an action at law"); *see also Northgate Homes, Inc.*, 126 F.3d at 1099. The district court therefore did not err in striking Manning's jury demand as to his claims under the Declaratory Judgment Act.

**B.  Federal Tort Claims Act**

Manning next asserts the district court erred in denying his motion to amend his reply counterclaim to add damage claims under the FTCA. This court reviews the district court's decision to deny Manning's motion to amend for abuse of discretion. *See Federal Kemper Life Assurance Co. v. Ellis*, 28 F.3d 1033, 1041 (10th Cir. 1994).

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend the pleadings after the time for amending as a matter of course "only by leave of court or by written consent of the adverse party," but that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has stated that "[i]n the absence of any apparent or declared reason--such as . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178 (1962).

The district court articulated a number of reasons for denying Manning's motion to amend. The district court noted that the case had been pending for over a year, that "the pleadings ha[d] been amended repeatedly, including two previous 'reply counterclaims' by Plaintiff," and that the motion to amend was made shortly before the close of discovery and less than four months prior to the scheduled trial.

The district court also stated that there were jurisdictional flaws with the proposed reply counterclaim. In asserting the FTCA claim, Manning did not specify the tort or the basis of his tort claim other than incorporating federal constitutional violations previously alleged. In the district court, Manning argued that those constitutional torts could be asserted under the FTCA.[2] As the district court noted, however, constitutional torts are not actionable under the FTCA. *See FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994).

The district court did not abuse its discretion in denying the motion to amend on the above grounds.

## C. District Court's Factual Findings

Manning next challenges eight of the district court's factual findings, claiming they are incomplete, misinterpret testimony, contain improper implications, and rely on noncredible testimony while disregarding contrary credible testimony.

This court must accept the district court's factual findings unless they are clearly erroneous. *See Exxon Corp. v. Gann*, 21 F.3d 1002, 1005 (10th Cir. 1994). "A finding of fact is 'clearly erroneous' if it is without factual support in

---

[2]On appeal, Manning appears to argue that his FTCA claim for damages was premised on a negligence cause of action under state law. Because this was not presented to the district court, however, this court does not consider this alternate theory.

the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 511 (10th Cir.1985) (citation omitted). "On appeal, we view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." *Exxon Corp.*, 21 F.3d at 1005 (citation omitted). This court further gives due regard to the district court's opportunity to judge the credibility of witnesses. *See* Fed. R. Civ. P. 52(a).

After reviewing the record, this court concludes the district court's factual findings are supported by evidence in the record and are not clearly erroneous. Although different inferences may be drawn from the evidence presented before the district court, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). Further, Manning's arguments regarding the credibility of witnesses would require this court to disregard the district court's credibility determinations, which this court may not do. *See id.* at 573-75.

**D. District Court's Legal Conclusions**

Manning also challenges six of the district court's legal conclusions concerning the interpretation and application of Forest Service regulations

promulgated under the Multiple Use Mining Act. In challenging the district court's legal conclusions, Manning asserts generally that the district court "selectively cites from portions of the regulations, but does not capture the intent and understanding of the regulations which provide the predictable, mandatory process for obtaining operating plans, including satisfying reclamation and bond requirements." Manning further asserts that the district court's "erroneous conclusions of law . . . amount to lack of due process."

This court reviews the district court's conclusions of law de novo. *See Averhart v. US West Management Pension Plan*, 46 F.3d 1480, 1485 (10th Cir. 1994). Upon review, this court finds no reversible error in the district court's interpretation and application of the law to the particular facts of this case, and this court therefore rejects Manning's challenge to the district court's conclusions of law.

**E. Multiple Use Mining Act of 1955**

Manning finally asserts the district court erred in determining that the Multiple Use Mining Act of 1955, 30 U.S.C. § 601, *et seq.*, applies to unpatented millsite claims and that based on this Act the United States has the right of free access to the surface of such claims for inspection and regulation purposes. Manning asserts the Act does not cover millsite claims, and argues the district court's determination that the Act applies to millsite claims is inconsistent with

the Act's language and legislative history, with the treatment of millsites in other federal statutes, and with mining practice and custom. Manning further asserts that because the 1955 Act does not provide the United States with a right of access to millsite claims, the entry by the Forest Service employees onto his millsite violated the Fourth Amendment.

The Mining Act of 1872 conferred a statutory right to enter upon federal public lands to search for minerals and provided that the locators of mining claims had "exclusive right of possession and enjoyment of all the surface included within the lines of their locations." 30 U.S.C. § 26; *see* 36 C.F.R. § 228.1 (1997). "This statute was construed to mean that as against parties other than the United States, the locator had exclusive right to use the surface of this land." *Silbrico Corp. v. Ortiz*, 878 F.2d 333, 335 (10th Cir. 1989) (internal quotation omitted).

In 1955, Congress amended the mining laws by passing the Multiple Use Mining Act, 30 U.S.C. § 601, *et seq.*, which retained to the Federal Government the right to manage the surface resources of subsequently located unpatented mining claims. *See* 30 U.S.C. § 612(b). The Act provides that the unpatented mining claims are subject to the right of the United States and its permittees and licensees to manage surface resources and "to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land" so long as

such does not "endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto."  *Id.*

Manning asserts the Act's language "is clear on its face, applying only to mining claims and not to millsite claims."  Contrary to this assertion, however, the Act does not address the issue but is silent with respect to whether millsites are covered.  The Act refers generally to "any mining claim hereafter located under the mining laws of the United States," without defining "mining claim" to either include or exclude millsites.  *Id.*

The Department of the Interior, the agency primarily charged with administering the Act,[3] has promulgated regulations for the surface management of mining claims "to prevent unnecessary or undue degradation of Federal lands which may result from operations authorized by the mining laws."  43 C.F.R. § 3809.0-1 (1997).  These regulations define "mining claim" as including "any unpatented mining claim, *millsite*, or tunnel site located under the mining laws . . . ."  *Id.* § 3809.0-5(d) (emphasis added).[4]

---

[3]The Department of the Interior "has been granted plenary authority over the administration of public lands, including mineral lands."  *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 336 (1963); *see also* 43 C.F.R. § 3809.0-3 (1997); 36 C.F.R. § 228.1 (1997).

[4]Shortly after the enactment of the Multiple Use Mining Act of 1955, the Solicitor of the Department of the Interior opined that millsites were covered by the Act.  *See Effect of Section 4 of the Act of July 23, 1955 on Mill Site Locations*, 64 Interior Dec. 301, 1957 WL 8735 (July 22, 1957) (stating that although the Act "is silent as to mill sites as such, I think that there is no doubt that it applies to

The Forest Service, responsible for managing the National Forests,[5] has also promulgated regulations which "apply to operations . . . conducted under the United States mining laws . . . as they affect surface resources on all National Forest Service lands." 36 C.F.R. § 228.2 (1997). The Forest Service regulations, like the Interior Department regulations, define "mining claim" as including "[a]ny unpatented mining claim or *unpatented millsite* authorized by the United States mining laws of May 10, 1872, as amended." *Id.* § 228.3(d).

Because Congress did not clearly address the issue, this court defers to interpretations of the statute by the agencies charged with its administration,

mill site locations" and noting that "the Department has held with respect to the act of June 4, 1897 . . . , which is silent as to mill-site locations and which permits mining locations in national forests, that it applies to mill-site locations as the mill-site provision of . . . 30 U.S.C. sec. 42 . . . is an essential part of the present system of mining laws" (internal citation omitted)). Although the Solicitor's opinion is not entitled to the substantial deference afforded under *Chevron*, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), this court may look to the opinion for guidance and is permitted to give the opinion some weight. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Some reliance on the opinion is particularly warranted here given that the opinion is consistent with earlier and later pronouncements by the agency. *See id.* at 140.

[5]Congress has delegated to the Secretary of Agriculture the authority to make "rules and regulations" to "regulate [the] occupancy and use" of national forests. 16 U.S.C. § 551; *see also* 30 U.S.C. § 601; *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 582 (1987). Through this delegation of authority, the Department of Agriculture's Forest Service has promulgated regulations so that "use of the surface of National Forest System lands in connection with operations authorized by the United States mining laws . . . shall be conducted so as to minimize adverse environmental impacts on National Forest System surface resources." 36 C.F.R. § 228.1 (1997).

-13-

provided such interpretations are based on a permissible construction of the statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-45 (1984). One of the primary purposes of the Multiple Use Mining Act of 1955 was to "amend the general mining laws to permit more efficient management and administration of the surface resources of the public lands by providing for multiple use of the same tracts of such lands." H.R. Rep. No. 84-730 (1955), *reprinted in* 1955 U.S.C.C.A.N. 2474. The Act was intended to continue to encourage exploration and development of mineral resources on public lands under the general mining laws while also giving "full recognition to the vital importance of the forest and range resources of the public lands and the national forests." *Id.* Therefore, the legislation sought to foster mining activity "compatible with utilization, management, and conservation of surface resources" such as timber, water, wildlife, parks, monuments, and recreation areas. *Id.* The Interior Department and Forest Service regulations defining "mining claim" as including "millsites" are reasonable and consistent with the purpose of the statute to allow the efficient use, management, and conservation of the surface resources of public lands. This court thus concludes the Act applies to millsites.

Because the Forest Service has the authority to regulate Manning's millsite operations, this court rejects Plaintiff's contention that the Forest Service had no

-14-

right of access to his site and that the Forest Service employees' entry onto the millsite violated his Fourth Amendment rights.

### III. CONCLUSION

The district court did not err in striking Manning's jury demand, nor did the court abuse its discretion in refusing to grant Manning's motion to amend his counterclaim to add damage claims under the FTCA. The district court's factual findings are not clearly erroneous, nor are the court's legal conclusions contrary to law. Finally, the district court did not err in determining the Multiple Use Mining Act of 1955 applies to unpatented millsite claims. The judgment of the district court is **AFFIRMED**.