FILED
United States Court of Appeals
Tenth Circuit

July 8, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROD SCHULTZ,

Defendant-Appellant.

No. 09-1275
(D.C. Nos. 1:07-CV-00803-WYD &
1:00-CR-00481-WYD-2)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**,
Circuit Judge.

---

Rod Schultz, who worked as a correctional officer at the United States

Penitentiary in Florence, Colorado, was convicted by a federal-court jury of

conspiring to and depriving former inmate Pedro Castillo of his constitutional

rights in violation of 18 U.S.C. §§ 241 and 242. In *United States v. LaVallee*,

439 F.3d 670 (10th Cir. 2006), we affirmed Mr. Schultz's conviction and

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentence, and also affirmed the district court's denial of his motion for a new trial. Mr. Schultz then filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, which was also denied by the district court. We granted Mr. Schultz a certificate of appealability on the issue of whether he was denied effective assistance of counsel when his lawyers failed to interview and call Mr. Castillo as a witness at trial. According to Mr. Schultz, Mr. Castillo would have testified that Mr. Schultz did not beat him and thus, there was a reasonable probability he would have been acquitted. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2255(d), we affirm.

Mr. Schultz was one of several correctional officers charged with crimes following a multi-year investigation of inmate abuse at the penitentiary. During the investigation, Mr. Castillo told investigators "that he was beaten by several correctional officers around the first of April 1996. Though he could not recall all of the officers' names who participated in the abuse, he did state that all the officers who took part [in moving him to another cell] committed the abuse." *LaVallee*, 439 F.3d at 699-700. "He did not identify Mr. Schultz by name. Since Mr. Schultz was on duty that night, however, the Government began investigating him." *Id*. at 700.

Mr. Castillo did not testify at trial, nor did Mr. Schultz. However, two correctional officers involved in the crime—Charlotte Gutierrez and Kenneth Mitchell—did testify pursuant to their agreements to cooperate with the

-2-

government.  They told the jury that Mr. Schultz and Mike LaVallee, a co-defendant, decided to retaliate against Mr. Castillo because he threw a mop and bucket of water on the floor during an argument with Ms. Gutierrez.  To that end, they implemented a forced-cell move on the trumped-up claim that Mr. Castillo was trying to harm himself.  They took Mr. Castillo to a holding cell, and while Mr. Mitchell held him against the wall, Messrs. Schultz and LaVallee punched him several times in the back with their fists.  Mr. Mitchell testified that he could hear the beating continue even after he left the cell.  When Ms. Gutierrez entered the cell, Mr. LaVallee told her to kick Mr. Castillo, which she did.  Later, Mr. Schultz wrote reports identifying himself as one of the officers who moved Mr. Castillo and who remained in the holding cell until a physician's assistant arrived to treat Mr. Castillo's injuries.

Between February 2001, when Mr. Schultz was indicted, and May 2002, when Mr. Castillo was released, Mr. Schultz's lawyers never attempted to interview Mr. Castillo.  Nor did they try to locate him following his release from Florence and prior to trial, which began in May 2003.  Mr. Schultz's theory of defense was that the beating never took place.  Specifically, in closing argument his lawyer told the jury that "[n]o beatings took place[,]" R., Supp. Vol. VII at 7115, and that Mr. Castillo's "scrapes and bruises," *id*., came from his "resisting and fighting and not going[,]" *id*., to the new cell.

Shortly after Mr. Schultz was sentenced in November 2003, his brother hired a private investigator to locate Mr. Castillo, who was found in Miami, Florida. The investigator showed him a picture of Mr. Schultz, and Mr. Castillo told him that he did not believe Mr. Schultz was among the guards who beat him in the April 1996 incident and that Mr. Schultz had treated him with dignity and respect. Armed with this information, Mr. Schultz filed a motion for a new trial on the basis of newly discovered evidence. The FBI followed up with its own interview of Mr. Castillo in June 2004, and obtained an affidavit from Mr. Castillo in which he acknowledged his "memory of the episode is vague and unreliable due to the number of officers who beat me and the passage of time." *Id.*, Supp. Vol. VIII, Doc. 1552, Attach. B.2, ¶ 13. He further stated that he "was sure Schultz did not participate in beating me because I was sure he had not been on duty or present in the SHU at all on April 5, 1996." *Id.* at ¶ 9. And despite what he previously told Mr. Schultz's investigator, he stated "I can not now say whether Rod Schultz did or did not participate in beating me on April 5, 1996." *Id.* at ¶ 11.

The district court held an evidentiary hearing on Mr. Schultz's motion for a new trial. Mr. Castillo testified at the hearing and gave conflicting accounts regarding Mr. Schultz's role, if any, in the beating. The court denied the motion for several reasons, including the lawyers' failure to exercise due diligence in interviewing Mr. Castillo prior to trial. This court affirmed on the ground of lack

of due diligence in *LaVallee*, 439 F.3d at 701, but did not address whether Mr. Castillo's testimony was "merely impeaching or whether there is a reasonable probability that it would result in an acquittal[,]" *id*. at 700.

The district court also denied Mr. Schultz's later-filed habeas petition, holding that he failed to satisfy both prongs of the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), to establish ineffective assistance of counsel. The court found that the failure to interview and call Mr. Castillo as a trial witness fell below an objective standard of reasonableness, thus satisfying the first prong. However, the court concluded that Mr. Schultz did not demonstrate prejudice, and thus failed to meet the second prong:

> In order to demonstrate prejudice, Schultz must establish that counsel's performance rendered the proceedings 'fundamentally unfair or unreliable.' *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). In other words, he 'must show that there was a "reasonable probability" that the result would have been different but for the error.' *Smith v. Workman*, 550 F.3d 1258, 1265 (10th Cir. 2008) (quotation omitted). I find that Schultz has not established that his counsel's performance was prejudicial, and thus find that this claim lacks substantive merit.

R., Vol. I at 805-06.

"An ineffective-assistance-of-counsel claim presents a mixed question of law and fact. We must accept the district court's underlying factual findings unless clearly erroneous, but we review de novo whether counsel's performance was legally deficient and whether any deficiencies prejudiced the defendant." *Anderson v. Att'y Gen. of Kan*., 425 F.3d 853, 858 (10th Cir. 2005) (citation,

quotation marks, and brackets omitted). De novo review means that we make an

independent determination of the issue. *United States v. Hall*, 984 F.2d 387, 389

(10th Cir. 1993). A factual finding is clearly erroneous only "if it is without

factual support in the record or if the appellate court, after reviewing all the

evidence, is left with a definite and firm conviction that a mistake has been

made." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998). "[W]e

view the evidence in the light most favorable to the district court's ruling and

must uphold any district court finding that is permissible in light of the

evidence[,]" giving "due regard to the district court's opportunity to judge the

credibility of witnesses." *Id*. at 813.

Mr. Schultz argues there was a reasonable probability he would have been

acquitted if Mr. Castillo had testified at trial. We disagree. As noted previously,

the district court held a two-day hearing on Mr. Schultz's motion for a new trial,

during which Mr. Castillo testified. With respect to the motion under § 2255, the

court found it unnecessary to conduct another hearing; instead it relied on

Mr. Castillo's previous testimony and incorporated certain relevant factual

findings from its order denying the motion for a new trial. *See* R., Vol. I at 806.

In its well-reasoned order, the court explained that Mr. Castillo's testimony was

inconsistent with his prior statements, the trial testimony of Mr. Mitchell and

Ms. Gutierrez, and Mr. Schultz's own defense. To put it in the vernacular,

Mr. Castillo's testimony was all over the map, with one notable exception: he said

he was beaten in early April 1996 by the guards who participated in the forced-cell move. Mr. Schultz admitted that he was part of this crew, and according to Mr. Mitchell, Messrs. Schultz and LaVallee punched Mr. Castillo several times in the back with their fists. But Mr. Schultz never put on any evidence that he was not among those who beat Mr. Castillo (which would have undermined his defense that no beating occurred); instead, he denied that any beating took place. This fact, along with the other inconsistencies, leads us to conclude there is no reasonable probability that Mr. Castillo's testimony would have changed the outcome.

The judgment of the district court is AFFIRMED.

Entered for the Court


Wade Brorby
Senior Circuit Judge