**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 27, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LINDA L. WILLIAMS,

Defendant-Appellant.

No. 09-1541
(D.C. No. 1:06-CR-00374-WYD-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **LUCERO**, and **MURPHY**, Circuit Judges**.**

---

Linda L. Williams appeals from the district court's order affirming her conviction following a trial before a magistrate judge for damaging property of the National Forest Service. She argues that the testimony of a Forest Service police officer identifying her as the person seen on a surveillance video destroying a trailhead sign should not have been admitted at trial. We affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Williams owns two unpatented mining claims comprising forty acres in the Uncompahgre National Forest in Ouray County, Colorado.[1] Over the course of several years, Williams and the Forest Service clashed over Williams's resistance to inspections of her mining claims and her repeated attempts to block public access to the area, a popular hiking destination, including placing a locked gate on an access road and threatening to set "booby-trap[s]," ROA, Vol. 5 at 97. Williams also clashed with a private group that restores trails in the area, threatening a citizen's arrest of some of its members who were monitoring vandalism to trailhead signs. Ultimately, Williams was arrested and charged in a thirteen-count complaint with a variety of offenses, including damaging a trailhead sign.

During a jury trial conducted by a magistrate judge, Forest Service police officer Jon Closson testified that he had interacted with Williams about six times over the past three years. He indicated that in April 2004, he installed a

---

[1]     "[U]npatented mining claims are subject to the right of the United States and its permittees and licensees to manage surface resources and 'to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land' so long as such does not 'endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto.'" *Manning v. United States*, 146 F.3d 808, 813-14 (10th Cir. 1998) (quoting 30 U.S.C. § 612(b)).

surveillance camera to monitor a newly erected wooden sign at a trail near Williams's mining claims. When he returned to the site several days later, he found the sign "smashed almost in half." *Id*. at 106. The video from the camera shows an individual wearing a baseball cap, bulky coat, and backpack smashing the sign with a hammer and walking around the area. When the prosecutor asked Officer Closson if he recognized the person on the video, defense counsel objected, arguing that "[t]he videotape speaks for itself and [that identifying the person is] a decision for the jurors to make." *Id.* at 109. The court overruled the objection, allowing Officer Closson to testify that he recognized the person on the video as Williams based on her "style of walk," "the backpack," and her "short dark hair." *Id.*

Williams testified, denying that it was her image on the surveillance video seen destroying the trailhead sign. She insisted, however, that trail signs were "not supposed to be there," *id.*, Vol. 6 at 239, 241, and she conceded that she had written letters demanding that the signs be removed, *id.* at 240, 241.

The jury convicted Williams on seven counts, including damaging the trailhead sign. She was sentenced to one year of supervised probation, with three months of incarceration suspended provided she complied with the terms of her probation.

Williams appealed her conviction and sentence to the district court. Unsuccessful, she now appeals to this court.

**DISCUSSION**

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Contreras*, 536 F.3d 1167, 1170 (10th Cir. 2008). Thus, "we will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." *Id.* (quotation and brackets omitted).

A lay witness's identification testimony is governed by Federal Rule of Evidence 701. *See id.* To be admissible, the testimony must be (1) rationally based on the witness's perception; (2) "'helpful to a clear understanding of the witness's testimony or the determination of a fact in issue'"; and (3) not covered by Rule 702. *Contreras*, 536 F.3d at 1170 (quoting Fed. R. Evid. 701).

Williams challenges only the second requirement, arguing that Officer Closson's testimony could not have been helpful to determining if she was the person in the video. The helpfulness of identification testimony depends on whether "there is some basis for concluding that the witness is more likely to correctly identify the defendant from the [video] than is the jury. The witness's prior familiarity with the defendant's appearance is the most critical factor to determine if such a basis exists." *Id.* (ellipsis, citations, and quotation omitted).

Officer Closson's familiarity with Williams is based on six encounters with her over a three-year period. The First Circuit has noted that a witness's "contact with [the defendant] on six occasions within a few months is within the zone that

-4-

courts have found acceptable to show that the witness was sufficiently familiar with the defendant to provide a useful identification." *United States v. Kornegay*, 410 F.3d 89, 95 (1st Cir. 2005) (collecting cases). Although Officer Closson's familiarity spans a period longer than a few months, the nature of his encounters with Williams would have left a distinct mental impression. Specifically, at least three of the encounters involved Williams angrily confronting Officer Closson. For instance, when Officer Closson attempted to serve her with a notice that her mining claims failed to conform to Forest Service rules, Williams refused to accept the notice, and began kicking and stomping on the notice after he placed it on her backpack on the ground. On another occasion, when Officer Closson was investigating complaints that the public was being excluded from the area of Williams's claims, Williams approached him angrily and insisted that he was on her private property; she temporarily relented and accompanied him as they walked around the mining claims, and eventually engaged him in a lengthy conversation about the property's ownership. On yet another occasion, when Officer Closson was speaking with two people on an access road, Williams angrily intervened, repeatedly insisting he was on private property and could not talk to the people.

Moreover, this court has approved a witness's familiarity on fewer encounters than present here. In *United States v. Bush*, 405 F.3d 909, 917 (10th Cir. 2005), we concluded that a detective's identification of the voice on an

audiotape as belonging to the defendant was helpful to the jury because the detective had spoken to the defendant "in person on three occasions." We also noted in *Bush* that "[c]ourts have . . . preferred to leave to juries any assessment of the weight to be given to [identification] testimony when there exist questions regarding the quantity or quality of perception." *Id.* at 916. Likewise, in the context of Officer Closson's familiarity with Williams's appearance, the jury was free to assess the weight of his identification testimony based on the number of encounters and the time period involved.

Additionally, Officer Closson's testimony would have been helpful because the video footage is partially obscured by plants and does not provide a close-up view of the perpetrator's face. The "clarity of the surveillance [video] and the quality and completeness with which the subject is depicted in the [video]" are important factors bearing on the admissibility of lay opinion testimony. *United States v. Dixon*, 413 F.3d 540, 545 (6th Cir. 2005). Also important is "whether the defendant had disguised his appearance at the time of the offense." *Id.*; *see also United States v. Towns*, 913 F.2d 434, 445 (7th Cir. 1990) (concluding that lay-witness identification testimony would have been helpful to the jury because "the robber depicted in the photograph was wearing a stocking cap, sunglasses, and a sweatsuit that potentially made him appear heavier than he really was"). Here, the identity of the person on the video is obscured by a baseball cap and bulky coat with the collar turned up.

Because Officer Closson had a variety of encounters with Williams, including ones in which he observed her backpack and her walking in the forest, he would have had an advantage over the jury in identifying her as the perpetrator, especially considering the less-than-perfect video footage and the person's hidden appearance. Thus, Officer Closson's testimony would have been helpful to the jury in identifying the person shown on the surveillance video. Accordingly, the magistrate judge did not abuse her discretion in admitting Officer Closson's testimony.[2]

---

[2] Williams also contends that even if Officer Closson's testimony was admissible under Rule 701, the magistrate judge abused her discretion in admitting the testimony because, under Rule 403, its probative value was substantially outweighed by the danger of unfair prejudice. Specifically, she questions the practice of allowing police officers to give identification testimony and notes that there were other witnesses the prosecution could have called to identify the person on the video. She rightly concedes, however, that there is no per se bar to law-enforcement officers providing lay-witness identification testimony. *Cf. Contreras*, 536 F.3d at 1171-72 (rejecting defendant's argument that probation officer's identification testimony was unfairly prejudicial). Further, Officer Closson set up the surveillance video camera and was familiar with Williams's appearance; thus, he was a logical person to testify about the video and the person seen destroying the sign. The magistrate judge did not abuse her "considerable discretion in performing the Rule 403 balancing test." *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010) (quotation omitted).

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge